**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**MARCH 1997 SESSION**

FILED

May 29, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | No. 02C01-9611-CC-00382 |
| | ) | |
| vs. | ) | Obion County |
| | ) | |
| **MICHAEL WAYNE HENRY,** | ) | Honorable William B. Acree, Judge |
| | ) | |
| Appellant. | ) | (Sale of Cocaine) |
| | ) | |

FOR THE APPELLANT:

C. MICHAEL ROBBINS
202 S. Maple, Suite C
Covington, TN 38019
(Appellate Counsel)

JOSEPH P. ATNIP
District Public Defender
JAMES D. KENDALL
Assistant Public Defender
P.O. Box 734
Dresden, TN 38225
(Trial Counsel)

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

KENNETH W. RUCKER
Assistant Attorney General
        Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

THOMAS A. THOMAS
District Attorney General
HEARD B. CRITCHLOW
Asst. District Attorney General
JAMES T. CANNON
Asst. District Attorney General
414 So. Fourth
P.O. Box 218
Union City, TN 38261-0218

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT
JUDGE

OPINION

The defendant , Michael Wayne Henry, was convicted in a jury trial in the Obion County Criminal Court of the sale of more than .5 grams of cocaine, a Class B felony,[1] and of a second sale of less than .5 grams of cocaine, a Class C felony.[2]  For the Class B felony, he received a nine- year sentence as a standard, Range I offender and a fine of $1,000.  For the Class C felony, he received a concurrent seven-year sentence as a Range II offender.[3]  In this direct appeal,  the defendant challenges the sufficiency of the evidence and contends that his sentences are excessive.

We affirm the judgment of the trial court.

The charges against the defendant arose as part of the Union City Police Department's undercover narcotic operations.  On two different occasions the defendant was involved in the sale of cocaine to an informant in Union City, Tennessee.    The grand jury returned separate indictments on each count.   The two cases were joined for trial.

Evidence presented at trial shows that on June 6, 1995, Anthony Dysart, the  informant, reported to Lt. Rick Kelly that Mike Henry, the defendant, was going "to hook him up," that is, "provide him with drugs."  The officer provided Dysart with a "wire" and forty dollars to make the purchase.  The informant rode his

---

[1]     Indictment No. 10148.

[2]     Indictment No. 10149.

[3]     The jury imposed a fine of $2,000 in each conviction.  The trial judge waived the fine due to the defendant's indigency in the conviction for the Class C felony and reduced the fine by one-half in the Class B felony conviction.

2

bike to the defendant's house while the officer remained in his police car monitoring the transaction. Via the wire, Lt. Kelly heard Dysart yelling, "Mike! Hey, Mike!" and then "Are you holding, man?" Kelly heard the defendant reply that they would have to go elsewhere. Moments later he saw the two men riding their bikes on Cheatham St. and heard the defendant say "There's the police."

Dysart testified that he followed the defendant to a house on Home St. After Dysart gave him the money, the defendant told him wait down the block. Dysart watched him enter the house. The defendant returned shortly and the two rode off down the street. The defendant spotted Kelly in his police car, and said, "There goes Rick Kelly. If he caught me, I would just eat them." They rode about for a few more minutes, and then over the wire, Kelly heard Dysart tell the defendant, "Go ahead and give me the whatever, I've got to get out of here. I've got to go." The defendant passed two "rocks" in a plastic bag to Dysart who turned over the contraband to Kelly a few minutes later. The laboratory technician testified that this bag contained .1 gram of a substance containing cocaine.

The second offense occurred on June 30, 1995. On that day, Dysart informed Kelly that he had arranged to buy cocaine from a person called "Fresh." Kelly provided Dysart with a wire and fifty dollars and dropped him off near "Fresh's" house at about 3:30 p.m. The officer observed that a car belonging to "Fresh" was parked nearby. Once again Kelly monitored the transaction via the wire worn by Dysart. He testified that he heard Dysart tell the person who answered the door that he wanted a "fifty." Following a conversation with two or three other people in the house, Kelly heard the person who delivered the drugs to Dysart ask if he could have "a pinch" off of it. Dysart refused because the rocks were too small.

3

Dysart testified that, although he had set up the deal with "Fresh," the defendant answered the door and asked him what he needed. "Fresh" came out of another room and was standing nearby. Dysart gave the money to the defendant who then went with "Fresh" into the kitchen. Shortly, the defendant returned with a plastic bag containing two "rocks" and some "shake" which he gave to the informant.[4] According to the laboratory technician's testimony, this bag contained .6 gram of a substance containing cocaine.

The conversations Lieutenant Kelly heard over the wire were preserved on tape. Kelly, however, testified that the tapes were of poor quality, the voices were low, and, because of the street jargon used, he believed the jury would be able to understand very little of what was on the tapes. At the state's request, the tapes were admitted into evidence. The defense did not object. Neither the state nor the defense requested that the tapes be played for the jury.

The defense attempted to challenge Dysart's credibility both during cross-examination and through a witness who testified concerning his reputation for being untruthful. The defendant, who could not remember what he was doing on the dates and times in question, denied that he had ever sold or delivered any cocaine to Dysart. The defendant's brother testified that the defendant worked for him in his pressure washing business and that he was probably working on the afternoon of June 30. However, he couldn't remember that day specifically and had no time cards or pay stubs that confirmed the defendant was at work at the time in question.

---

[4] According to Dysart, "shake" are crumbs that have broken off of the larger "rocks."

4

After deliberating for less than an hour, the jury found the defendant guilty in both cases.

## Sufficiency of the Evidence

The defendant now contends that the evidence presented at trial is insufficient to support convictions for the sale of cocaine. He argues that the record contains insufficient corroboration of Dysart's testimony, and that, at most, the evidence supports convictions for simple possession. In conjunction with his challenge to the sufficiency of the evidence, the defendant contends that the trial judge misinformed the jury concerning the two tapes and erred in refusing to allow the jury to hear the tapes once deliberations had begun.

The state argues that the evidence demonstrates that the transactions were sales as defined in <u>State v. William (Slim) Alexander</u>, No. 01CO1-9302-CR-00063, slip op. at 4 (Tenn. Crim. App., Nashville, March 24, 1994), and that the testimony of Lieutenant Kelly and Anthony Dysart is sufficient to sustain the convictions. With respect to the tapes, the state argues that because the defense neither objected at trial nor raised this issue in it's motionf for new trial, the issue has been waived. On the merits, the state contends that the trial judge properly denied the jury's request to hear the tapes since the defendant never requested that the tapes be played for the jury during the trial.

We first address the issue of the tapes. This issue has been waived pursuant to Tennessee Rules of Appellate Procedure 3(e) for failure to raise the issue specifically in the motion for new trial. The defense also failed to make appropriate objections at trial. A party who fails to take whatever action is reasonably available to prevent or nullify the harmful effect of an error at trial is not

5

entitled to relief under our rules. Tenn. R. App. P. 36 (a). This issue, therefore, is waived.

However, we choose to address this issue on its merits. Tenn. R. App. P. 2.

The defendant first contends that since the tapes were admitted into evidence, the trial judge wrongfully refused to allow the jury to hear the tapes and that the trial judge's remarks were improper comments on the evidence. The record discloses that during Lieutenant Kelly's testimony, the prosecution moved that the tapes be admitted into evidence. To admit the tape made on June 6, General Critchlow first asked the police officer, "Okay, would you be willing to make that exhibit to your testimony?" After receiving an affirmative response, she addressed the court saying. "Okay, I would move to make that Exhibit 2."

The procedure involving the second tape was even less formal. General Critchlow said, "I'm going to let you make that Exhibit --- four?" And the court responded, "It will be made Exhibit 4." In neither instance did the defense object to the admission. The record reflects that the tapes were introduced, marked and filed as exhibits. Neither the state nor the defense asked that the tapes be played for the jury.

Approximately 30 minutes after beginning their deliberations, the jury asked to hear the content of the tapes. The trial judge called the jury into the courtroom and gave the following instruction:

> Members of the jury, I understand from the bailiff that you have asked for a tape recorder to listen to the tapes of the transactions. I'm not going to be able to allow you to do that. I want to explain to you why.

6

These tapes were not played to you as part of the evidence. The testimony was that the tapes were inaudible, or you could not -- not inaudible, but they could not be understood.

Had either side asked that the tapes be played anyway, I would have done that. We would have played those tapes in court, and, had we done that, I would allow you to review those tapes again in the jury room.

As I previously told you, the only evidence that you may consider in this case is the testimony that you hear in this courtroom. You did not hear those tapes in the courtroom, and, therefore, it is not permissible for you to review those outside the courtroom.

They were made exhibits, and they were made exhibits for identification purposes only. Perhaps I did not make that clear. Obviously, I did not, but in any even the content of the tapes themselves are not part of the evidence in this case, and, therefore, I cannot allow you to listen to those. I hope you understand.

Once again, the defense made no objection to the statements of the trial court.

The trial court did not err in denying the jury access to the contents of the tapes. It is immaterial whether the tapes themselves were entered into evidence or were made exhibits for the purpose of identification only. Evidence is "any species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties . . . for the purpose of inducing belief in the minds of the court or jury as to their contention." Black's Law Dictionary 498 (5th ed.1979) (citation to cases omitted). Evidence includes "whatever is submitted to a judge or jury to elucidate an issue, to prove a case, or to establish or disprove a fact in issue." State v. Harris, 839 S.W.2d 54, 79 (Tenn.1992), cert. denied, 113 S.Ct. 1368 (1992)(Reid, J., dissenting)(citations to other cases omitted). In this instance, the contents of the tapes were not in evidence. Neither the state nor the defense requested that the tapes or any portion thereof be played for the jury. The trial court properly denied the jury's request to review the tapes in the jury room.

7

Furthermore, when the trial judge stated that Kelly had testified that the tapes were not understandable, he was not commenting on the evidence or vouching for the credibility of Lieutenant Kelly. He was explaining why he admitted the tapes for the purpose of identification only. As the contents of the tapes were not placed in evidence by either party, the trial judge did not err by refusing to allow the jurors to hear the tapes once deliberations began.

Contrary to the defendant's assertions, the tapes were not required to corroborate the testimony of either Kelly or Dysart. State v. James Moore, No. 6, slip op. at 2 (Tenn. Crim. App., Jackson, Feb. 13, 1991). Lieutenant Kelly testified to the events he observed and to the statements of the defendant that he heard over the wire. Dysart testified to the defendant's activities and to the incriminating statements that he personally heard the defendant make. Neither Kelly nor Dysart were accomplices of the defendant, and their testimony requires no corroboration. State v. Preston Bernard Crowder and Cynthia Diane Southall, No. 01CO1-9304-CR-00143, slip op. at 5 (Tenn. Crim. App., Nashville, March 14, 1995), perm. app. denied as to Southall (Tenn. 1995).

We must now consider whether the evidence presented at the trial is sufficient to support the defendant's convictions. Since a jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, a convicted defendant has the burden of demonstrating on appeal that the evidence is insufficient. State v, Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining that sufficiency, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v.

8

Harris, 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), cert. denied, 115 S.Ct. 743 (1994); Tenn. R. App. P. 13(e).

To convict a defendant for the sale of cocaine, the state must prove that the defendant knowingly sold a controlled substance. Tenn. Code Ann. § 39-17-417(a)(3) (Supp. 1996). The defendant does not dispute the fact that the baggies contained cocaine, a controlled substance. Nor does he contend that he acted unknowingly.[5] The laboratory technician testified without contradiction that the two baggies entered into evidence by the state contained, respectively, .1 gram and .6 gram of a substance containing cocaine. During the first transaction, the defendant remarked to Dysart that if the police caught him with the cocaine he would eat it, and in the second transaction, the defendant asked Dysart what he wanted, and when Dysart told him he wanted a "fifty,"[6] he took the fifty dollars and promptly returned with the appropriate amount of cocaine. The evidence is sufficient beyond a reasonable doubt for a rational juror to conclude that the defendant acted knowingly.

The defendant contends, however, that the facts in this case do not prove that the transactions constituted sales. In essence, he argues that as a

---

[5] "'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. . . ." Tenn. Code Ann. § 39-11-302 (1991).

[6] Dysart testified that a "fifty" represented a specific amount of cocaine which could be purchased for that price.

"procurer" of the cocaine, he may be convicted only of simple possession. <u>See</u> <u>State v. Baldwin</u>, 867 S.W.2d 358 (Tenn. Crim. App. 1993). The state argues that both transactions were sales as defined in <u>State v. William (Slim) Alexander</u>, No. 01CO1-9302-CR-00063, slip op. at 4 (Tenn. Crim. App., Nashville, March 24, 1994). We agree.

In <u>Alexander</u>, this court adopted the general definition of "sale" found at <u>Black's Law Dictionary</u> 1200 (5th ed. 1979) as "a contract between two parties by which the seller, in consideration of the payment or promise of payment of a certain price in money, transfers to the buyer the title and possession of the property." <u>State v. William (Slim) Alexander</u>, slip op. at 4. According to this definition, a sale consists of two broad components: a bargained-for offer and acceptance, and an actual or constructive transfer or delivery of the subject matter property. <u>Id</u>.

The defendant 's reliance on <u>State v. Baldwin</u>, 867 S.W.2d 358 (Tenn. Crim. App. 1993), is misplaced. In <u>Baldwin</u>, this court modified the defendant's conviction for selling cocaine to one for possession. <u>Id</u>. at 359. In <u>Baldwin</u>, the undercover officer offered to give the defendant a ride home. Neither the defendant nor another man who was riding in the car knew that the driver was a police officer. <u>Id</u>. When the two men discussed purchasing drugs, the defendant suggested that they drive to the area where her nephew might have some for sale. When she spotted her nephew, the other man took a twenty-dollar bill from the officer. <u>Id</u>. He and the defendant approached a man who accepted the money and handed the defendant a "rock." Upon their return to the car, the officer directed the defendant to give him the rock. When she complied, the officer arrested her. <u>Id</u>. In modifying the conviction, this court found that, although her actions had facilitated the sale, the

10

fact that she brought the drugs back to the car was insufficient to establish her intent to participate in the sale.

In this case, Dysart offered to purchase a certain amount of cocaine for a given price. The defendant accepted the payments. One who accepts payment in exchange for property is involved in a sale. State v. David Henning, No. 02C01-9404-CC-00079, slip op. at 5 (Tenn. Crim. App., Jackson, Oct. 26, 1994). In both transactions, the defendant actually delivered the property for which he had accepted payment. In Baldwin, on the other hand, the defendant pointed out the person who was selling drugs, accompanied a third person who had the money to the transaction, and then carried the controlled substance from the seller to the undercover officer. The defendant's actions in this case satisfy the two broad requirements of a "sale." In both transactions he accepted an offer and delivered the property. The evidence in the record is sufficient for a rational juror to conclude that the defendant participated in a knowing sale of cocaine on June 6 and June 30, 1995.

**Sentencing**

The trial court sentenced the defendant to serve 9 years in the Department of Correction as a Range I offender for the sale of more than .5 gram of cocaine and to serve a concurrent 7-year sentence for the sale of less than .5 gram of cocaine. The jury imposed a $2,000 fine in each conviction, but the trial judge waived the fine in No. 10149 and reduced it to $1,000 in No. 10148.

The defendant complains that his sentence is excessive and that the trial judge erred by ordering him to serve his sentences in the Department of

11

Correction. He contends that the trial judge ignored the mitigating factors that exist in this case and refused to assign him to Community Corrections because of improper factors. We find no error in the trial court's sentencing determinations and affirm its judgment.

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a <u>de novo</u> review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d)(1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our <u>de novo</u> review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. § 40-35-210(b) (Supp. 1996); <u>State v. Ashby</u>, 823 S.W.2d at 168.

At the conclusion of the sentencing hearing, the trial judge found that the three enhancement factors filed by the state were appropriate and that the one mitigating factor argued by the defense was not. The court found that

1. The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. §40-35-114(1).

2. The defendant has a previous history of unwillingness to comply with conditions of release in the community. Tenn. Code Ann. § 40-35-114(8).

3. The felony was committed while on probation. Tenn. Code Ann. §40-35-114(13).

The trial court made appropriate findings of fact relating to each enhancement factor and held correctly that each factor was applicable to both convictions. The defendant does not question the accuracy of those findings. Nor could he as they are fully supported by the record. Our review discloses that the record fully supports the trial court's factual findings.

With respect to the mitigating factors, the trial court made no ruling other than to state the single mitigating factor filed by the defense was not appropriate. The trial court was referring to the factor found at Tennessee Code Annotated Section 40-35-113(1): "The defendant's criminal conduct neither caused nor threatened serious bodily injury." With respect to this factor, this court has previously held that, although a voluntary sale of cocaine may have the potential for bodily injury, this mitigating factor was applicable "unless the conduct relates to serious bodily injury and the factor should be considered in relation to the facts and circumstances of the particular case." State v. Johnny Ray Christman, No. 01CO1-9211-CC-00361 slip op. at 4 (Tenn. Crim. App., Nashville, Sept. 2, 1993). If the defendant has sold very small quantities to a willing buyer, the factor may well be

an appropriate mitigating factor. Id.[7] However, this court has refused to apply the factor where large amounts of cocaine have been involved.[8]

The sales in this case involved relatively small amounts of crack cocaine sold to a willing purchaser. There is no indication that the defendant is a major dealer or that he was involved in serious drug trafficking. However, even giving the defendant the benefit of the existence of this mitigating factor, we cannot say that minimum sentences would be appropriate under the circumstances of this case. After considering the applicable enhancing and mitigating factors, we hold that concurrent sentences of nine years and seven years are appropriate.

The defendant also contends that he should have been sentenced under the Community Corrections Act of 1985. See Tenn. Code Ann. §§ 40-36-101 through 106 (1991). A sentence under the Community Corrections Act is an alternative sentence. State v. Charles P. Grigsby, No. 02C01-9507-CR-00184, slip op. at 4,6 (Tenn. Crim. App., Jackson, January 15, 1997), app. perm. to appeal

_____

[7]  See also State v. Troy Carney and James Andrew Slaughter, No. 01CO1-9412-CR-00425, slip op. at 15 (Tenn. Crim. App., Nashville, Feb. 23, 1996), perm. app. denied (Tenn. 1997)(four counts of selling cocaine); State v. Angele Franklin, No. 03C01-9402-CR-00061, slip op. at 4 (Tenn. Crim. App., Knoxville, Sept. 27, 1995), perm. app. denied (Tenn. 1996)( delivery and conspiracy to deliver more than .5 gram); State v. James Moore, No. 6, slip op. at 4 (Tenn. Crim. App., Jackson, Feb. 13, 1991)( sale of one "rock" of crack cocaine).

[8]  See e.g. State v. Richard Ricardo King, No. 01CO1-9603-CR-00113, slip op. at 3, (Tenn. Crim. App., Nashville, Feb. 20, 1997) (3 counts of sale of cocaine over 26 grams); John Derrick Martin, No. 01CO1-9502-CR-00043, slip op. at 8 (Tenn. Crim. App., Nashville, Dec. 19, 1995), affirmed in State v. Martin, ___ S.W.2d ___ (Tenn. 1997) (two sales of .5 grams or more and one of 26 grams or more); State v. Roger D. Pulley, No. 01CO1-9501-CC-00013 (Tenn. Crim. App., Nashville, Sept. 20, 1995) (more than 26 grams); State v. Little, 854 S.W.2d 643, 652) (Tenn. Crim. App. 1992); (serious drug traffickers); Johnny Arwood v. State, No. 335, slip op. at 8-9 (Tenn. Crim. App., Knoxville, May 9, 1991), perm. app. denied (Tenn. 1991) (sale or delivery of more than 2.5 grams).

filed, Mar. 14, 1997; Tenn. Code Ann. § 40-35-104(c)(8) (1990). Therefore, we must first determine whether the defendant is a suitable candidate for alternative sentencing.

Especially mitigated or standard offenders convicted of a class C, D, or E felony and who do not possess a criminal history evincing a clear disregard for the laws and morals of society and a failure of past efforts at rehabilitation are presumed to be favorable candidates for alternative sentencing options absent evidence to the contrary. Tenn. Code Ann. § 40-35-102(5), (6) (Supp. 1996). The defendant in No. 10148 was convicted of a Class B felony. In No. 10149, he was convicted of a Class C felony as a Range II, multiple offender. Moreover, the defendant has a criminal history demonstrating a clear disregard for the laws of society because the present offense and one earlier offense were committed while on probation. The defendant has demonstrated his inability to rehabilitate himself. Hence, he is not presumed to be a favorable candidate for alternative sentencing.[9]

We recognize, however, that the trial court did not review the defendant's eligibility under the Community Corrections Act. See Tenn. Code Ann. § 40-36-101 et seq. Therefore, we consider whether he meets the requirements of that act. The Community Corrections Act allows trial courts to sentence certain nonviolent felony offenders, who are neither eligible nor good candidates for probation, to participate in community-based alternatives to incarceration. Tenn. Code Ann. §§ 40-36-103,-104 (1990); State v. Meeks, 779 S.W.2d 394, 397-98 (Tenn. Crim. App. 1988); State v. Charles P. Grigsby, No. 02C01-9507-CR-00184, slip op. at 8 (Tenn. Crim. App., Jackson, January 15, 1997), app. perm. to appeal

---

[9] Since the defendant received an actual sentence of nine years, he is not eligible for probation. Tenn. Code Ann. § 40-35-303(a) (1991).

15

<u>filed</u>, March 14, 1997. An offender who seeks a community correction sentence must demonstrate that he:

> 1. will be incarcerated in a correctional institution;
>
> 2. was convicted of property-related or drug/alcohol related felony offenses or other felonies not involving crimes against the person;
>
> 3. was convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> 4. does not demonstrate present or past behavior indicative of violence or a pattern of committing violent offenses; and
>
> 5. was not sentenced to incarceration or on escape at the time the present offenses were committed.

<u>See</u> Tenn. Code Ann. § 40-36-106(a)(1) - (7).

Upon our review of the record, we conclude that the defendant meets the minimum eligibility requirements under subsection (a)(1) - (7). However, even though the defendant meets the requirements of the Act, he is not automatically entitled to such relief. <u>State v. Grandberry</u>, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990). If an offender meets the minimum standards, the trial court must apply the sentencing considerations set forth in Tennessee Code Annotated section 40-35-103 and the general sentencing guidelines to determine whether a defendant should be sentenced to Community Corrections. <u>Charles P. Grigsby</u>, slip op. at 10.

In the present case, the trial court found that confinement of the defendant is necessary, based upon his history of criminal conduct, to avoid depreciating the seriousness of the offense and because measures less restrictive have been unsuccessful. <u>See</u> Tenn. Code Ann. § 40-35-103(1) (1990). A trial

16

court's findings are binding unless the evidence in the record preponderates against them. State v. Jones, 802 S.W.2d 221,223 (Tenn. Crim. App. 1990). The record in this case supports the findings of the trial court. The defendant has a criminal record that consists of six felony and two misdemeanor convictions. He committed the present offenses while he was on supervised probation for two drug-related convictions in Kentucky. The presentence report indicates that he and his wife are separated and that the last payment of child support was on February 23, 1995. He owed approximately five thousand dollars in child support arrearage on the day of sentencing. Although he has obtained seasonal work at a local nursery, his employment record is far from exemplary. The defendant does not claim that he is eligible for Community Corrections based on a special need such as drug or alcohol abuse.[10] He has frequently been given the opportunity to rehabilitate himself in the community and has been unable to change his life style.

The defendant's rehabilitative potential is central to determining whether he should be assigned to Community Corrections. State v. Charles P. Grigsby, slip op. at 11. The trial court must decide each case based on its individual facts and circumstances. Given the trial court's ability to review the offender's demeanor and characteristics first hand, the trial judge is in the best position to determine whether the offender is likely to succeed in a community corrections setting. Id. A felon's rehabilitation potential and the risk of repeating criminal conduct play a major role in a court's sentencing decisions. State v. Johnny Ray Christman, slip op. at 4-5. Unless the record fails to support either the factual or statutory basis for the trial court's sentencing decision, this court will not interpose

---

[10] According to the presentence report, the defendant rates his mental health as excellent, considers himself to be a moderate drinker, and, although he has used cocaine in the past, does not presently use illegal drugs.

a different sentencing result. <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The defendant has failed to establish that he is entitled to any form of alternative sentencing including Community Corrections. The record supports the trial court's concern that the defendant was not a good risk considering his previous lack of success with sentencing alternatives. The judgment of the trial court is affirmed in its entirety.

_____
Curwood Witt, Judge

CONCUR:

_____
Joseph B. Jones, Judge

_____
Gary R. Wade, Judge