STATE of Tennessee, Appellee,

v.

Bruce Edward LITTLE and Charles J. Miller, Appellants.

No. 01C01–9108–CR–00239.

Court of Criminal Appeals of Tennessee, at Nashville.

May 13, 1992.

Permission to Appeal Denied Oct. 26, 1992.

Lionel R. Barrett, Jr. and Paul G. Whetstone, Nashville, for Little (on appeal).

Michael J. Flanagan, Nashville, for Little (at Trial).

James R. Omer (Appeal Only) and Terrence E. McNabb (Trial and Appeal), Nashville, for Miller.

Charles W. Burson, Atty. Gen. and Reporter, Kathy M. Principe, Asst. Atty. Gen., Victor S. Johnson III, Dist. Atty. Gen., John Zimmerman and Jon Seaborg, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

SUMMERS, Judge.

This case presents the appeals of Bruce Edward Little and Charles J. Miller from their convictions in the Davidson County Criminal Court. A jury found appellant Little guilty of conspiracy to deliver over 30 grams of cocaine, delivery of over 30 grams of cocaine, and possession with intent to deliver over 30 grams of cocaine. The same jury convicted appellant Miller of conspiracy to deliver over 30 grams of cocaine, possession of cocaine with intent to deliver, and possession of a firearm in the commission of a felony. The trial court sentenced Little to serve 3 consecutive 12–year sentences for a total of 36 years. The trial court sentenced Miller to serve 10 years for each of the drug related charges and 3 years for possession of a firearm. The sentences for the drug convictions were to run concurrently with each other but consecutively to the firearm charge for a total of 13 years. Both appellants challenge their convictions and sentences.

## FACTS

In June of 1989, the Davidson County Drug Task Force received certain information that caused it to initiate an investigation at the Bavaria Apartments. An anonymous informant relayed to the Task Force that illegal activity was taking place at 4501 Packard Drive which was an address within the apartment complex. It was later learned that the residents of that apartment were Bruce Little and Trina Thomp-

son.[1] While conducting a surveillance of the residence, officers noticed three cars, a 1985 Mercedes, a 1979 Corvette and a 1982 Buick Regal, parked in the driveway. All three vehicles were registered in the name of Ms. Thompson. Officer Phillip Taylor of the Drug Task Force testified that he received further information that Little and Thompson had moved to a house on Chesapeake Drive. Again the informant relayed that unlawful behavior was taking place at this address. Specifically, the anonymous caller stated that Little and Thompson were dealing in kilos and ½ kilos of cocaine. Thus, officers set up a surveillance at the Chesapeake Drive residence. On June 28, 1989, while conducting a surveillance, Officer James W. McWright observed a 1985 Cadillac Seville arriving at the Chesapeake Drive home. The driver and passenger of this automobile were appellant Miller and co-defendant Shannon Benton.[2] They knocked on the door and entered the home of Little and Thompson. Later both appellants came out of the home and Miller moved his car so Little could get out. Miller then went back into the house. Officer Taylor followed Mr. Little to an Econo Lodge motel.

Little went into a room at the motel, but only for a very short period of time. He then reentered his car and officers followed the car back to Little's home. As he walked to the door, Officer McWright noticed that Little had a package in his hand. It was a plastic bag with writing on it. Officer McWright testified at trial that he had learned through various investigations and drug schools that cocaine is ordinarily wrapped and packaged in brick form and it was on this basis that he concluded that Little was probably carrying ½ kilo of cocaine. When Little took the package inside his house, he was "looking up and down the street to see if anybody was standing out or if he could see anybody looking." Approximately five minutes later, appellant Miller left the house with the exact same package in his hand. One officer described

these facts as a "text book" drug transaction.

Officer McWright instructed Officer Taylor to stop the Cadillac driven by Miller. After stopping Miller and Benton who was sitting in the passenger's seat, Officer Taylor patted Miller down and found a .22 caliber pistol in his right front pocket. Miller was arrested. Another officer got Benton out of Miller's car and retrieved a package which contained approximately ½ kilogram of cocaine from the passenger's side. Miller's gun had five rounds of ammunition in it. He was also wearing a beeper at the time. Officer Taylor obtained a warrant to search the home of Mr. Little and Ms. Thompson. When he conducted the search, Ms. Thompson was there with two small children. He found $1,380.00 in cash in the bedroom, a cocaine grinder with residue on it, a strainer with cocaine residue on it, a motel receipt, another $100.00 in cash in another room, two lock box keys in a purse, a rifle and a shotgun. While he was conducting this search, two other officers went to draft a search warrant for the Econo Lodge, Room 215.

Officer Taylor was present at the search of the Econo Lodge motel room. That room was registered to Rose Flynn who used 3524 Chesapeake as her address. Actually, that was the address of Little and Thompson. When the officers executed the search warrant, the occupants included Rose Flynn, David Clark and a small child. Found inside were 4½ kilograms of cocaine in one suitcase. The ½ kilo which had been seized from appellant Miller was in a plastic bag which matched the packaging of the four and ½ kilos. Specifically, it was possible to match up the "cut" edges of the two packages as well as the writing which was on some tape.

Officers found in Clark's possession a paper with the name "Vinnie" and a Miami phone number written thereon. By this time, Little had been arrested; and officers were with Ms. Thompson to make sure she

---

1. Ms. Thompson was a co-defendant in this case, but the charges against her were dismissed before the case went to the jury.

2. Ms. Benton was a co-defendant in this case, but the charges against her were dismissed before the case went to the jury.

could not call and warn the people in the motel room. Officer Taylor asked David Clark to make a call to Vinnie which was taped with Clark's permission. The approximate value of the cocaine found in the motel room was well over $500,000.

The parties stipulated that the substance on the grinder that was found was cocaine; that the metal sifter was not tested; that the package taken from appellant Miller contained 518 grams of cocaine which was 89% pure; and the packages found in the motel room contained 4,781 grams of cocaine which was 93% pure.

One officer, in testifying about Mr. Little's arrest, stated that he found a copy of an automobile rental agreement in Little's possession. The agreement showed that the car had been rented six days earlier and had been driven a total of 1,972 miles. That same officer testified that it is approximately 1,800 miles from Nashville to Miami and back to Nashville. Little had been billed for the rental of that car which was returned earlier that day.

Officer Taylor testified about certain documents found at the Chesapeake residence. He discussed a number of receipts that were found at this home representing expenditures for motels, stereo equipment, jewelry, airline tickets and automobiles. For the period of June 1, 1988, to July 1, 1989, the receipts totaled more than $75,-000. These purchases did not include any expenses for items such as food, entertainment, or utilities. The appellant's 1987 and 1988 tax returns showed adjusted gross incomes of $18,953 and $10,806 respectively.

David Clark pleaded guilty to various charges stemming from the night of his arrest. At the time of the instant trial, Clark had not been sentenced. He received no deal from the state, but hoped that his cooperation might help in his sentencing. He testified that he had known appellant Little for one and one-half years. He originally met him through a man named Richard Green, also known as "Pop." He had seen Green purchase six or seven ounces of cocaine from Little on a prior occasion. Actually, he saw quite a few transactions

of this nature. Little introduced Green to a man in Miami named "Vinnie." Clark often drove and picked up cocaine from Vinnie on behalf of Green who, at the time of trial, lived in Atlanta. On most occasions, Clark would drive Green's car to Florida and retrieve the cocaine from Vinnie. He would return and deliver certain amounts to Green and then take some to Little in Louisville, Kentucky; Cleveland, Ohio; or Nashville. His general practice was to get a motel room, and Little would go to that room and make the transaction.

On this occasion, Little rented a car for Clark to go to Miami and back. He first went to Atlanta and then on to Miami with his girlfriend and her son. Green and Little told him that it would be better if he looked more like a part of the family when he went to pick up the drugs. He met with Vinnie at a motel in Florida and received 10 kilograms of cocaine. He gave Vinnie a bundle of money and then took the drugs back to Atlanta. Green told him that 5 kilos were to go to Nashville for Little. When he arrived in Nashville, he checked into an Econo Lodge and called Little. Little came and got the keys to the rental car so it could be returned. Little informed Clark that he immediately needed ½ kilogram. Clark cut the cocaine and gave it to Little. Little, who had the money in his coat pocket, left $10,000 with Clark in return for the drugs. The agreement was that Little would retrieve the cocaine as needed. According to their understanding, Little would be able to move all 5 kilos in one week; and then Clark would take the money to Green in Atlanta.

When Clark was arrested, he had Vinnie's number on a piece of paper. At first he did not say anything to the police and denied involvement. Later, however, he decided to speak to the authorities. He called Vinnie at the request of the police. He informed Vinnie that Little had been arrested and that he needed some money for transportation out of Nashville. At first, Vinnie did not understand that Little had been arrested and asked Clark whether Little or Green could provide the money. When it became clear to Vinnie that arrests

had been made, Vinnie then pretended not to know what Clark was talking about but agreed to wire some money as a "friendly gesture."

## I.

The appellants both contend that the evidence was insufficient to support the jury's guilty verdicts.

■ In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams,* 657 S.W.2d 405 (Tenn.1983). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). Moreover, a guilty verdict removes the presumption of innocence which the defendant enjoyed at trial and raises a presumption of guilt on appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973). The defendant has the burden of overcoming this presumption of guilt. *Id.*

■ Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985); Rule 13(e), T.R.A.P. The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield,* 676 S.W.2d 542 (Tenn.1984). *Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim.App.1978).

The overwhelming evidence shows that the appellants were part of a large and organized conspiracy to distribute cocaine. In fact, there is ample proof in the record to support all the convictions in this case. We find this issue to be without merit.

## II.

Appellant Miller contends that the trial court erred in refusing to suppress the evidence seized from his automobile at the time of his arrest.

At the suppression hearing officers testified that they learned from an anonymous informant that appellant Little had received 2 kilograms of cocaine and was bagging it for resale at his home on Chesapeake Drive. As a result, surveillance was set up at that house. During the surveillance, appellant Miller arrived in his Cadillac. He entered the house and about fifteen minutes later he came out to move his car so Little could leave. Miller went back into the house, and an officer followed Little to the Econo Lodge. Little returned thirty minutes later carrying a plastic bag under his arm "like an elementary school kid would carry a book to school." Officer McWright suspected that this package contained ½ kilo of cocaine. Through extensive experience and training, Officer McWright was familiar with the practice of drug dealers and could tell by the size and shape of the package the approximate amount of cocaine contained therein. The officers observed Little carrying the package inside the house and noticed him "looking up and down the street to see if anybody was standing out or if he could see anybody looking." Only five minutes elapsed until Miller left the house with the exact same package in his hand. He then got in his car and drove away. Because of the observations made by the Drug Task Force in addition to the information the police department had received, Officer McWright directed Officer Taylor to stop Mr. Miller.

Taylor turned on his blue lights and pulled Mr. Miller over to the side of the road. As he approached Miller, Officer Taylor ordered him to raise his hands. The officer patted Miller down and found a small .22 caliber pistol in his right front pocket. At that time he placed Miller under arrest for carrying the concealed weapon. At that point they looked inside the passenger compartment of the car and found the plastic bag which contained

over ½ kilo of cocaine. They seized the drugs, the gun, and the beeper that Miller was wearing at the time.

In *State v. Watkins*, 827 S.W.2d 293 (Tenn.1992), the Supreme Court affirmed this Court's opinion addressing the applicable law with regard to investigatory stops. In that case, the Supreme Court stated:

> A police officer may make an investigatory stop of a motor vehicle when the officer has reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. [Citations omitted]. In determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances. [Citations omitted]. This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. [Citation omitted]. A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him.

*Watkins*, 827 S.W.2d at 294. We find that the police officers had the required reasonable suspicion, supported by specific and articulable facts, that Miller was in possession of an illegal substance. Therefore, we believe that the stop was warranted.

Once the appellant was stopped and subsequently arrested for possession of a firearm, the officers were permitted to search the passenger compartment of the automobile. See *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The appellant does not challenge the constitutionality of his arrest. A policeman may conduct a search of the passenger compartment of the automobile as a contemporaneous incident of a lawful custodial arrest of the occupant of that automobile. *Id.* Even if Miller was not concealing a firearm, we believe officers could have made a valid warrantless arrest pursuant to T.C.A. § 40–7–103. During the search of the automobile, officers found

more than ½ kilogram of cocaine. We hold that the seizure of that contraband was constitutionally permissible.

### III.

Appellant Miller also contends that the trial court erred in refusing to grant him a severance from appellant Little. He specifically complains that the "overwhelming volume" of David Clark's testimony concerning Little's prior criminal activities was prejudicial to him. We believe that the trial court properly declined to grant the severance. This Court will only overturn a denial of severance if it finds that the trial judge committed an abuse of discretion. *Seelbach v. State*, 572 S.W.2d 267 (Tenn. Crim.App.1978).

In the instant case, there is no indication that a severance was "necessary to achieve a fair determination of the guilt or innocence of one or more defendants." Tenn.R.Crim.P. 14(c)(2)(ii). At the time Miller requested a severance based upon the admission of damaging testimony by David Clark, the trial court denied the motion but said he would "be very happy to instruct the jury that the testimony of Mr. Clark is only admissible against Mr. Little and Ms. Thompson." The trial judge's admonition was as follows:

> I want you to understand that the testimony of this witness, as related to prior drug transactions that he testified to, is only admissible against Mr. Little and Ms. Thompson. And those facts that he [Mr. Clark] testified to should not be considered by you in determining the guilt or innocence of the other two defendants.

This Court must assume that the jury followed the trial judge's instruction. *State v. Barton*, 626 S.W.2d 296 (Tenn.Crim.App. 1981). Furthermore, a severance need not be granted where the evidence which was introduced could have been admitted against him in a separate trial. *State v. Hammonds*, 616 S.W.2d 890 (Tenn.Crim. App.1981). The state is correct in its argument that since Miller was charged with conspiracy along with Little, even if Miller had been tried separately, David Clark's

testimony could have been introduced to establish the larger, ongoing conspiracy of which the instant drug transaction was a part. We find this issue to be without merit.

## IV.

■ Appellant Little also presents an issue with regard to David Clark's testimony. He contends that such testimony was inadmissible because it concerned prior criminal conduct not alleged in the indictment.

Rule 404(b) of the Tennessee Rules of Evidence allows the presentation of "other crimes, wrongs, or acts" in certain limited situations. Such evidence "is not admissible to prove the character of a person in order to show action in conformity with the character trait." *Id.* The conditions which must be satisfied before allowing the admission of such evidence are as follows:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude evidence if its probative value is outweighed by the danger of unfair prejudice.

Rule 404(b)(1), (2) and (3), Tenn.R.Evid. All three conditions were met before the trial court allowed the jury to hear Mr. Clark's testimony. First, the trial court held a hearing outside the jury's presence to determine the admissibility of this evidence. The hearing was extensive. Second, the court found that the evidence was admissible to address a material issue other than showing that the past conduct conformed with a certain character trait. The court pointed out that Little's defense, as stated in his opening argument, was that he was merely "a victim of circumstance" and not the drug dealer that the state was attempting to paint him. Citing several federal cases, the court found that a showing of the appellant's prior dealings was probative to the issue of intent. See *United States v.*

*Acosta–Cazares,* 878 F.2d 945 (6th Cir. 1989); *United States v. Hitow,* 889 F.2d 1573 (6th Cir.1989); and *United States v. Cardenas,* 895 F.2d 1338 (11th Cir.1990). Finally, the court stated on the record its opinion that the probative value outweighed any danger of unfair prejudice. We agree with the trial court's findings. The evidence was, in our opinion, entered in conformity with Rule 404(b), Tenn.R.Evid.

The trial judge went through the process outlined in Rule 404 in the interest of great caution. He stated on the record, however, that he believed that the evidence was likely admissible for the purposes of showing the greater ongoing conspiracy among Green, Clark, Vinnie, and Little. Thus, although the evidence was admissible for the purpose of showing Little's intent pursuant to Rule 404(b), he also believed that the evidence was admissible as substantive evidence of the ongoing conspiracy. That notwithstanding, the judge gave the jury the following instruction:

[Y]ou have heard evidence that the defendant Little previously committed acts, similar to those charged in this case. You may only use this evidence concerning previous acts to decide the defendant's state of mind at the time of this incident and whether or not the state has proved the requisite intent. Remember, even if you find that the defendant may have committed similar acts in the past, this is not evidence that he committed such acts in this case. You may not convict a person simply because you believe he may have committed similar acts in the past. The defendant is on trial only for the crimes charged, and you may consider the evidence of prior acts only on the issue of his intent.

This instruction was given to the jury after the direct examination of David Clark. We must presume that the jury followed these instructions, *State v. Barton, supra,* and considered the evidence of Little's prior involvement with cocaine only as it related to his intent to commit the crimes for which he was under indictment. We find this issue to be without merit.

## V.

The state elicited testimony from Officer Phillip Taylor that he recovered a number of documents at the home of appellant Little when he executed a search warrant there. These documents consisted of receipts, including receipts for hotels, money orders, automobiles, stereo equipment, airline tickets, rental cars, and jewelry. Officer Taylor testified that for the period of June 1, 1988, to July 1, 1989, the receipts showed expenses in an amount greater than $75,000. These expenses did not include those for items such as food, entertainment, electricity, and water. The seized documents also included what purported to be the 1987 and 1988 tax returns which the appellant had filed. The 1987 tax return indicated that the appellant and his wife at the time had a total adjusted gross income of $18,953; and his 1988 tax return indicated that the couple had a total adjusted gross income of $10,806.

Little's attorney objected on the grounds that the evidence was hearsay, not subject to any exception. In response, the trial court stated that the records were admissible as admissions pursuant to Rule 803(1.2), Tenn.R.Evid. Additionally, the trial court found that the transactions were admissible to corroborate David Clark's testimony.

The state admits that the evidence was offered to prove the truth of the matter asserted; and, therefore, the information was hearsay and could only have been admitted if it was covered by an exception to the hearsay rule. 801(c), Tenn.R.Evid. The state contends, however, that the evidence was admissible as adoptive admissions under Rule 803(1.2)(B). An adoptive admission is a "statement in which the party has manifested an adoption or belief in its truth...." *Id.* The trial judge specifically found that the records were admissible on this basis, finding that the appellant would not have saved these records unless they were accurate.

As explained in a leading treatise on the law of evidence in Tennessee, an adoption of another statement may be either expressed or implied. An implied adoption occurs when a party learns about another's statement and takes some action that a court can view as adopting the content of that statement. *Tennessee Law of Evidence,* § 803(1.2).3 (2d Ed.1990). In the instant case two acts of the appellant adopted the information in the receipts. First, he retained the records. Second, he took these records with his other possessions during his move from an apartment to a townhouse a few days prior to the search which uncovered the documents. By not only retaining the records, but going to the additional effort of moving them from one home to another, the appellant showed even more strongly that he adopted the information contained in those records as his own. Thus, while the information contained in the records is in fact hearsay, the records were properly admitted under the adoptive admission exception to the hearsay rule.

Appellant Little maintains that the evidence should not have been admitted because the records were highly prejudicial. While the state concedes that the information contained in those records was prejudicial since they helped to establish that the appellant had a motive for committing the crime for which he is charged, we agree with the state that the appellant was not unfairly prejudiced. Indeed, its probative value was extremely high and outweighed any unfair prejudice to the appellant.

## VI.

Appellant Little also contends that the court erred in allowing the jury to hear a recorded conversation between David Clark and his drug connection in Florida, Vinnie. In that conversation Clark and Vinnie discussed the fact that the police had caught appellant Little during a cocaine transaction. The appellant maintains that the admission of this evidence violated his right to confrontation under the Tennessee and United States Constitutions. The state on appeal contends that the appellant waived review of this issue. They point out that the appellant objected to the admission of the tape only on the basis that it included information about prior drug transactions

and thus should not have come in as proof of other crimes. Thus, according to the state's argument, the appellant has failed to make a specific contemporaneous objection and has thereby waived this complaint.

■ The state also argues that the tape was properly admitted under the well-established exception to the hearsay rule allowing admissions of co-conspirators. Rule 803(1.2)(A), Tenn.R.Evid. In this case the statements of both Clark and Vinnie were statements of co-conspirators. The statements, however, can doubtfully be considered as taking place "during the course of" and "in furtherance of" the conspiracy as required by the Rule. Thus, this exception is probably inapplicable.

■ In any event, the appellant has failed to display to this court how the taped conversation between Clark and Vinnie was prejudicial to him. He has not included in his brief any portion of the tape which was incriminating to him. We have listened to the tape and do not believe that any statement made by Vinnie or Clark was prejudicial in light of the overwhelming evidence presented in other portions of the trial. We find this issue to be without merit.

## VII.

■ Appellant Little next contends that the trial court erred in denying his motion for a new trial because of certain statements made by the prosecutor during closing arguments. The statements in question are as follows:

Ladies and gentlemen, one thing you need to be careful about lawyers, sometimes when there is no evidence they want to make it up. Mr. Flanagan [Little's attorney] stood right here in front of you and made up some evidence when he said his client went there to get some cocaine for his own personal use. That's what he said, that he went to Room 215 to get cocaine for his own personal use. And, ladies and gentlemen, as sure as you took an oath you said I will decide this case on evidence out of that witness stand. And there is no proof in this record that Mr. Little went to that room to get cocaine for his personal use.

That's something he made up, that's something he put to you. It's a red herring. Don't believe it. There's no evidence. He didn't get a bit of it for his own personal use.

As soon as that cocaine came in town he starts with his own network, his group of people that he sells cocaine to. And the first man on the door step is Charles Miller and his girlfriend. * * * This is a regular customer. He's part of an organization, a network. He's a half kilo man.

The appellant complains that the prosecutor committed misconduct by intimating that defense counsel "made up" something as a "red herring." This complaint has been waived for failure to make an objection during argument. See *State v. Pritchett*, 621 S.W.2d 127 (Tenn.1980).

■ Waiver notwithstanding, the appellant's objection is without merit. The prosecutor did not state anything that was untrue. There was no evidence in the record that the appellant was simply purchasing cocaine for his own use. The prosecutor may have mischaracterized the point of the defense attorney's closing argument, but that is not prosecutorial misconduct. We see nothing improper about the prosecutor's statement. This issue is without merit.

## VIII.

■ In the next issue, both appellants contend that their sentences were excessive. When reviewing a sentence, this Court is required to conduct a *de novo* review on the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40–35–401(d).

The trial judge sentenced appellant Little to 12 years for conspiracy to deliver over 30 grams of cocaine, 12 years for delivery of over 30 grams of cocaine, and 12 years for possession with intent to deliver over 30 grams of cocaine. The trial court further ordered that these sentences run consecutively, for a total effective sentence of 36 years. Additionally, Little was fined $100,-000. Little complains that the sentences

were set too high within the range and that he should not have been ordered to serve consecutive sentences.

■ We are of the opinion that the court did not err with regard to Little's sentencing. The court appropriately held that there were no mitigating factors pursuant to T.C.A. § 40–35–113. The court found two enhancement factors, however. First, he found that the appellant was a leader in the commission of an offense involving two or more criminal actors. T.C.A. § 40–35–114(2). The trial judge also found that the appellant had a previous history of criminal behavior. T.C.A. § 40–35–114(1). We agree with the trial court that there was evidence that the appellant had been involved in a number of prior drug transactions bringing substantial amounts of cocaine into Davidson County. We believe that the trial court properly sentenced appellant to 12 years for each of his convictions.

In determining whether to run appellant's three convictions concurrently or consecutively, the trial court found that appellant was a professional criminal pursuant to T.C.A. § 40–35–115(b)(1). A person who knowingly devotes himself to criminal acts as a major source of livelihood is a professional criminal pursuant to that statute. Acknowledging that the instant offenses led to the largest seizure of cocaine by state law enforcement officers in Davidson County to date, the trial court pointed out that this was only one of a series of similar acts committed by the appellant. The evidence showed that the appellant lived the lifestyle of a wealthy person but had no legitimate source of income. The court concluded that the source of his income was the criminal activity revealed during the trial of this matter. We are unable to find that the court erred in this conclusion. Therefore, we affirm the sentence as entered by the trial court.

■ Appellant Miller was sentenced by the trial court to serve 10 years for conspiracy to deliver over 30 grams of cocaine, 10 years for possession of cocaine with intent to deliver and 3 years for possession of a firearm in the commission of a felony. The court ordered the two cocaine convictions to run concurrently and the firearm conviction to run consecutively to the other two convictions. Miller argues that the sentence of 13 years was excessive and this Court should reduce the total sentence to not more than 10 years. He asserts that he is entitled to the minimum presumptive sentence because of notions of fairness. Such a sentence, according to Miller's argument, would be the least severe measure necessary to achieve the purpose for which the sentence was imposed. See T.C.A. § 40–35–103.

As the trial judge pointed out, appellant Miller seemed to show absolutely no remorse for his actions. His explanation of the charges against him to his probation officer was that he was stopped because he was black and was driving his mother's Cadillac. He believed that his constitutional rights were violated and that he was simply in the wrong place at the wrong time. He did not show that he was cognizant of the fact that he was found carrying ½ kilogram of cocaine worth approximately $10,000, despite the fact that he had no apparent means of legal employment and no relative who was supporting him. Additionally, he had on him at the time of his arrest a loaded pistol and a beeper with at least four people trying to contact him while he was being booked. All of this indicates that he had an ongoing relationship with serious drug dealing. The trial judge specifically noted the fact that this was not simply a street corner drug dealer selling an occasional gram of cocaine. Rather, a very substantial amount of cocaine was involved; and this appellant was fairly high on the distribution chain. The evidence indicates that this was not his first experience with such a transaction. Therefore, his sentence is affirmed.

## CONCLUSION

For the foregoing reasons, the convictions and sentences in this case are affirmed in all respects.

JONES and BIRCH, JJ., concur.