# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 8, 2001

## STATE OF TENNESSEE v. JOYCE ANN RICE

**Direct Appeal from the Circuit Court for Madison County**
**No. 98-883      Roger A. Page, Judge**

---

**No. W2000-01766-CCA-R3-CD  - Filed June 26, 2001**

---

The defendant, a construction company payroll clerk, was convicted of fourteen counts of forgery, Class E felonies, and one count of theft of property over $1000, a Class D felony, for utilizing her position at the company to write and cash invalid checks on her employer's account.  She was sentenced as a Range II, multiple offender to three years on each forgery conviction, and six years on the theft conviction, to be served concurrently for an effective sentence of six years.   In this appeal as of right, the defendant argues that the trial court erred in allowing evidence of her prior crimes to be admitted at trial, and that the evidence was not sufficient to support her convictions. After a careful review, we conclude that the trial court did not err in allowing the State to impeach the defendant's credibility by questioning her about her prior convictions, and that the evidence was sufficient to support the jury's verdict.  Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which L. TERRY LAFFERTY, SR.J., joined. DAVID H. WELLES, J., Not Participating.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); George Morton Googe, District Public Defender; and Vanessa D. King, Assistant District Public Defender, Jackson, Tennessee (at trial and on appeal), for the appellant, Joyce Ann Rice.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The defendant, Joyce Ann Rice, is a former payroll clerk at Thomson & Thomson, Incorporated, a bridge construction company in Jackson, Tennessee.  Thomson & Thomson

accountant David Wyman testified at trial that the defendant was the primary employee responsible for preparing and printing the payroll checks for the company's employees. According to Wyman, company procedure called for a supervisor to periodically review the payroll checks prepared by the defendant to ensure that they were being written to current employees. However, when Wyman asked the defendant on September 3, 1998, how the process was working, she told him that the supervisor had quit reviewing the checks. Wyman therefore requested that the defendant bring the checks to him. In his review, he noted a payroll check made out to "Noe Garza." The next day, he noticed that the check made out to Garza was missing. When asked, the defendant denied any knowledge of its whereabouts, and told Wyman that it had been with the other payroll checks when she left work the preceding day.

Upon investigating, Wyman discovered that Noe Garza had only briefly worked for the company, from April 15, 1998, until May 6, 1998. From May 29 through August 28, 1998, however, time sheets had been prepared for him, and fourteen payroll checks made out to him had been issued on the company's payroll account. Wyman stated that the defendant had been responsible for issuing each of these fourteen checks, and that she had not been authorized to issue checks to an employee who was no longer on the payroll. Copies of the cashed checks, which ranged in amounts from $234.52 to $612.97, were identified by Wyman and introduced into evidence.

William Smith, a bridge foreman for Thomson & Thomson, testified that he had supervised Garza from April 15, 1998, until May 6, 1998, the last day that Garza worked for the company. He had filled out and turned in the last time sheet for Garza on May 7, 1998. He had not authorized any further time sheets for Garza, and did not recognize the time sheets that had been turned in after May 7.

Kathy Jarvis, a former employee of Volunteer Bank in Jackson, testified that she had worked for seven and one-half years at the small Volunteer branch bank located at 2673 North Highland. She identified the defendant as a customer of the bank who regularly came by the North Highland branch to make deposits or to cash checks. Jarvis testified that during the relevant time frame, the defendant came every Friday through the drive-through window of the bank, where she deposited her paycheck into her checking account and, using a work ID with Garza's employee identification number, cashed a paycheck made payable to Noe Garza. Jarvis had recognized Garza's name because she had seen Garza in the bank in the past, prior to the time when the defendant started cashing his checks. During the summer months of 1998, she never saw Garza come to the bank to cash a paycheck.

Sergeant Tom Rudder, a criminal investigator for the Madison County Sheriff's Department, testified that he interviewed the defendant on September 10, 1998. After being informed of her rights and signing a waiver of rights form, the defendant gave a statement acknowledging that she was responsible for cutting the payroll checks for the company's employees, but denying that she had ever taken or cashed any check made out to Noe Garza. She remembered receiving time cards on Garza through September 1, 1998, and said that to her knowledge, he still worked for the company.

Following the trial court's denial of her motion for judgment of acquittal, the defendant testified in her own behalf. She denied having created time sheets on Garza, having cashed checks made payable to him, or having taken any checks other than her own. She stated that she prepared the payroll checks each week from time sheets that supervisors left in her mailbox, and that she had added nothing to Garza's time sheets other than the total hours he worked and his employee number.

The defendant further testified that at the beginning of the week in which the problem with the checks was discovered, she had received a letter from the Social Security Administration informing her that more than ten percent of the social security numbers listed on the company's employees' W-2 forms for the year ending in 1997 did not match the names on file with the Social Security Administration. When she researched the matter, she found that each of the unmatched social security numbers belonged to a Mexican employee. She said that she had reported her findings to Wyman, telling him of her belief that the Mexican employees were illegal aliens, and that she did not want to continue to sign her name to the certified payrolls being turned in to the Tennessee Department of Transportation. She testified that Wyman told her that the employees were not illegal, and that she was to continue to do her job. According to the defendant, the next day Wyman asked her to bring the payroll checks for his review.

The defendant introduced medical records to show that she had been undergoing an EKG test on May 29, 1998 at 1:15 p.m., the same day that one of Garza's checks had been cashed at 12:49 p.m., and again on June 19, 1998 at 12:56 p.m., the day that another one of Garza's checks had been cashed at 12:42 p.m. She stated that she had to wait in her doctor's office before each EKG, until "eventually" she was called to the exam room for the test. The defendant could not explain her signature on the back of two of Garza's paychecks. She acknowledged that she had had "trouble with authorities in the past."

On cross-examination, the defendant admitted that she was a customer of Volunteer Bank, and that she had regularly deposited her paycheck with Kathy Jarvis at the bank. She again denied, however, that she had cashed any of Garza's checks. She said that she thought that Jarvis was mistaken, and that she had her confused with someone else. She also denied that she had signed her name to the back of the two checks on which her signature appeared. In response to questioning by the State, she acknowledged that she had been convicted of both burglary and theft of property over $1000 on July 17, 1995, in Madison County Circuit Court, and that she had been sentenced to four years on each conviction.

Following deliberations, the jury convicted the defendant of fourteen counts of forgery and one count of theft of property over $1000 but under $10,000. The trial court sentenced her as a Range II, multiple offender to three years on each forgery conviction and six years on the theft of property conviction, with the sentences ordered served concurrently, for an effective sentence of six years. The defendant filed a timely appeal to this court.

## ANALYSIS

# I. Evidence of Defendant's Prior Convictions

The defendant first contends that the trial court erred in allowing evidence of her prior convictions at trial. She argues that the jury was improperly influenced in its determination of her guilt by the similarities between the crimes for which she had previously been convicted and the ones for which she was presently charged. She also argues that the State improperly used the prior convictions in its closing argument "as an appeal to the jury to convict [her] because of her prior criminal history." In response, the State contends that the convictions were properly admitted by the trial court and argued by the State for the sole purpose of impeaching the credibility of the defendant's testimony.

This issue is governed by Tennessee Rule of Evidence 609(a), which provides as follows:

> **Impeachment by evidence of conviction of crime.**–(a) General Rule.–For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:
>
> (1) The witness must be asked about the conviction on cross-examination. If the witness denies having been convicted, the conviction may be established by public record. If the witness denies being the person named in the public record, identity may be established by other evidence.
>
> (2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.
>
> (3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

That a prior conviction involved the same or similar crime as the one for which the defendant is being tried does not automatically prevent its use to impeach the defendant's credibility. State v. Walker, 29 S.W.3d 885, 889 (Tenn. Crim. App. 1999), perm. to appeal denied (Tenn. 2000) (citing

<u>State v. Miller</u>, 737 S.W.2d 556, 560 (Tenn. Crim. App. 1987)). The trial court must, however, carefully weigh whether the possible prejudice to the defendant is outweighed by the probative value of the evidence on the issue of the defendant's credibility. <u>Id.</u> at 890 (citing <u>State v. Mixon</u>, 983 S.W.2d 661, 674 (Tenn. 1999) and <u>State v. Farmer</u>, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992)). In determining the probative value of the prior convictions, the trial court must assess the similarity of the crime for which the defendant is on trial and the crime underlying the impeaching conviction. <u>Farmer</u>, 841 S.W.2d at 839. The court must next analyze the relevance of the impeaching conviction to the issue of the defendant's credibility. <u>Id.</u> The trial court's decision to admit prior convictions for impeachment purposes will not be reversed on appeal unless it appears from the record that the trial court abused its discretion. <u>State v. Blanton</u>, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

The record in this case reflects that the State gave written notice prior to trial of its intent to use the defendant's prior convictions for impeachment purposes should the defendant elect to take the stand. Thereafter, prior to the start of the defendant's trial, the trial court held a hearing as mandated by <u>State v. Morgan</u>, 541 S.W.2d 385 (Tenn. 1976), to determine the admissibility of the convictions. The State sought to use four of the defendant's prior criminal convictions to impeach her at trial, all of which occurred in 1995: felony burglary, felony theft of property over $1000, felony vandalism, and misdemeanor criminal impersonation. The trial court's ruling shows that it correctly considered the issues, applying the appropriate balancing test in reaching its decision that the State could impeach the defendant with her convictions for burglary and theft of property:

> So in looking at [the] first one and the second one, I'm going to find that the probative value on credibility outweighs the unfair prejudicial effect on the substantive values as to the burglary. And even though theft of property over a thousand is the same crime, we have cases that say that even though the crimes are the same, if it–impact on credibility is very high, you can still use it.

> So in this case I'm going to find with respect to the first one and the second one, burglary and theft of property over a thousand, that the convictions' probative value on credibility as to each one outweighs the unfair prejudicial effect on substantive issues.

> Now, as to the vandalism count, it is a felony, but I don't find in my study that vandalism has very much to do with credibility, so I'm not going to allow that one.

> Criminal impersonation, in this Court's opinion the impact on credibility in that case is just not high enough to offset the fact that it's a misdemeanor.

So I guess in essence my ruling is if Mrs. Rice testifies, the 95-477 conviction on burglary and also the 95-477 conviction on theft of property over a thousand can be used to impeach her.

Our review has revealed no abuse of discretion by the trial court in this matter. The fact that the theft of property conviction was the same as one of the offenses for which the defendant was being tried did not preclude its use as impeachment evidence against the defendant. See Walker, 29 S.W.3d at 889. In addition to being felonies, the defendant's prior convictions for theft of property and burglary involved crimes of dishonesty, see State v. Miller, 737 S.W.2d 556, 559-60 (Tenn. Crim. App. 1987) (noting that burglary is a crime of dishonesty); State v. Addison, 973 S.W.2d 260, 268 (Tenn. Crim. App. 1997) (stating that theft is a crime of dishonesty), thereby enhancing their probative value on the issue of the defendant's credibility. The trial court clearly took into consideration the fact that the defendant's theft of property conviction was for the same offense as one of the crimes for which she was currently on trial. However, by taking the stand to contradict Kathy Jarvis's direct testimony that the defendant had cashed Garza's checks, the defendant made her credibility an important issue at trial. We conclude, therefore, that the trial court did not abuse its discretion in allowing the State to impeach the defendant's credibility with evidence of her prior convictions for burglary and theft of property.

The defendant also contends that the prosecutor argued improper propensity evidence when referring to her prior convictions in his closing arguments to the jury. As an initial matter, we note that by failing to object to the prosecutor's closing comments at trial, the defendant has waived the issue on appeal. See Tenn. R. App. P. 36(a); State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992) (stating that failure to object to prosecutor's alleged misconduct in closing argument waives any later complaint). Even if not waived, however, the trial transcript makes it clear that the prosecutor argued only that the defendant's prior convictions be considered by the jury in its consideration of the weight to be given the defendant's testimony:

> And when you're considering the credibility of the witnesses, the Judge is also going to instruct you that the Defendant has put her credibility in issue because she testified today.
>
> Now, she does have a prior record, and she's admitted to that prior record and told you that she has a burglary conviction, a theft of property conviction over a thousand dollars from I believe it was 1995.
>
> The State's not asking you–And the law is very clear on this and the Judge is going to instruct you. You can't convict Mrs. Rice simply because she's got a prior record. You can't do that. You shouldn't do that. That's not our law.

But what you can consider, and the Judge is going to instruct you regarding credibility of witnesses, is when you're judging her testimony and whether she's telling you the truth or Mrs. Jarvis is telling you the truth or Mr. Wyman is telling you the truth, you can consider her prior record in judging her credibility today.

And I submit to you, ladies and gentlemen, who told you the truth today is Mr. Wyman from Thompson and Thompson, Mr. Smith from Thompson and Thompson, and Mrs. Jarvie [sic] from the bank when they told you what occurred and how these checks were cashed.

The defendant's prior convictions were properly admitted as impeachment evidence, and thus proper for comment by the prosecutor in closing argument. This issue, therefore, is without merit.

## II. Sufficiency of the Evidence

Next, the defendant contends that the evidence was not sufficient to support her convictions beyond a reasonable doubt. Specifically, the defendant argues that she presented sufficient evidence, in the form of proof of her EKG exams, to show that it would have been physically impossible for her to have cashed "at least one" of the checks in issue.

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Viewed in the light most favorable to the State, the evidence in this case was sufficient to support the jury's verdict. Contrary to the defendant's assertions, proof that she was undergoing an EKG test fourteen minutes after a check made payable to Garza was cashed at Volunteer Bank does not create a reasonable doubt of her guilt. Although the defendant testified that she was forced to wait in her doctor's waiting room before beginning the tests, the jury was free to discredit her

testimony. The defendant presented no evidence, other than her own testimony, to show that it would have been impossible for her to have reached her doctor's office to begin the tests within fourteen minutes of having gone through the drive-through window of the Highland branch of the bank. David Wyman testified, and the defendant acknowledged, that she was the employee responsible for preparing Garza's checks, including the fourteen payroll checks that were issued after Garza's employment had ended. Kathy Jarvis, who testified that she was very familiar with the defendant, unequivocally identified her as the woman who cashed Garza's checks. In addition, the defendant's signature appeared on the back of two of the checks. This evidence was more than sufficient for a rational trier of fact to find the defendant guilty of the crimes beyond a reasonable doubt.

## **CONCLUSION**

We conclude that the trial court did not err in allowing the State to impeach the defendant's credibility with her prior convictions for burglary and theft of property. We further conclude that the evidence was sufficient to support the defendant's convictions of forgery and theft of property over $1000. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE