IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 22, 2003

## STATE OF TENNESSEE v. RALPH LAMAR WILLIAMS
## ALIAS RALPH DANIELS

**Appeal from the Criminal Court for Hamilton County**
**No. 236399     Rebecca Stern, Judge**

**No. E2002-02274-CCA-R3-CD**
**September 8, 2003**

A Hamilton County Criminal Court jury convicted the defendant, Ralph Lamar Williams, of four counts of aggravated rape, a Class A felony; one count of rape, a Class B felony; and one count of aggravated kidnapping, a Class B felony. The trial court sentenced him as a violent offender to life without parole for each conviction. The defendant appeals, claiming that the prosecutor improperly suggested to the jury during closing argument that the defense bore the burden of establishing the defendant's innocence. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

David R. Barrow, Chattanooga, Tennessee, for the appellant, Ralph Lamar Williams alias Ralph Daniels.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; William H. Cox, III, District Attorney General; and Lila Jayne Statom, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the victim's being kidnapped from a Krystal Restaurant in Chattanooga on January 20, 2001. The victim testified that about 9:30 p.m., she was in the drive-thru line at a Krystal's restaurant. The defendant approached her car, hit her in the head, got into the car, and drove away from the restaurant. The defendant continued to hit the victim in the head and held her down in the front seat. The victim lost consciousness and awoke in an abandoned apartment. The defendant ordered the victim to take off her clothes and raped her vaginally and anally. He also raped her vaginally and anally with a cardboard tube that he had taken from a coathanger and forced the victim to perform fellatio. In addition to repeatedly raping the victim throughout the night, the

defendant smoked crack and beat her. At some point, the victim heard the defendant talking to a man named "Red" in another room. The victim was able to escape from the apartment about 10:00 a.m. the next day and drove to a Golden Gallon convenience store where a clerk telephoned the police.

Officer Davis Lewis of the Chattanooga Police Department was dispatched to the Golden Gallon on the morning of January 21, 2001. He found the victim sitting in her car, and she told him that she had been raped. The victim was hysterical, and her face was bleeding and bruised. The victim took police officers to an abandoned apartment at 256 West 38th Street in the Alton Park housing project. In a room of the apartment, Officer Lewis saw cushions on the floor, blood on the wall next to the cushions, a blanket, a yellow shirt with hair on it, a crack pipe, and a cardboard tube from a coathanger. The victim described her attacker, and Officer Lewis recognized the description as that of the defendant.

Chattanooga Police Sergeant Dan Moody testified that he went to the hospital to interview the victim and then took her to a rape crisis center. He later collected the victim's clothes and a rape kit from the crisis center and sent them to the Tennessee Bureau of Investigation (TBI) for testing. Sergeant Moody interviewed the victim at the police station on January 22, and the victim quickly picked the defendant's photograph out of a photograph array. A warrant was obtained for the defendant, and the defendant was arrested on January 24.

Ardyce Ridolfo, a registered nurse at the Sexual Assault Crisis Center, testified that she examined the victim on the afternoon of January 21. The victim, who was crying and holding her arms around her body, had multiple bruises and cuts to her face. The victim also had bruises on her eyes, right knee, hands and fingers, and one of her arms, and a clump of hair was missing from her head. Ms. Ridolfo found lacerations and abrasions to the victim's vagina and rectum that she did not believe could have occurred during normal sexual intercourse. She collected samples for a rape kit and found sperm during her examination of the victim.

David Lee Heatrington, Tommy Lee Hutchinson, and Edward Lamar "Red" Jones testified for the defense that they saw the defendant with a woman on the night of January 20. Mr. Heatrington said that about 9:30 p.m., he was at an apartment in Alton Park, that the defendant and the victim also were at the apartment, and that the defendant and the victim had a conversation about exchanging sex for drugs. He said the defendant and the victim left the apartment about 10:00 p.m. Mr. Hutchinson testified that he saw the defendant with a woman about 11:00 p.m. and that they were getting out of a car on 38th Street. Mr. Jones testified that about 9:30 p.m., he and the defendant went to Alton Park to buy drugs. He said he and the defendant bought crack and smoked it in an abandoned apartment about 11:30 p.m. Mr. Jones fell asleep and heard the defendant bring a woman into the apartment about 12:30 a.m. The defendant and the woman were in another room of the apartment, and Mr. Jones did not see her. The next day, Mr. Jones entered the room and saw the woman lying next to the defendant. The woman gave Mr. Jones a cigarette, and he left the apartment.

The parties stipulated that vaginal and rectal swabs collected from the victim contained the defendant's sperm, that semen found on the cardboard tube collected from the apartment belonged to the defendant, and that DNA found on the cardboard tube and blood found on a wall in the apartment belonged to the victim. Special Agent Louis Kuykendall of the TBI Crime Laboratory testified that the victim's blood tested negative for alcohol, and TBI toxicologist Dawn King testified that the victim's blood tested negative for drugs. The jury convicted the defendant of four counts of aggravated rape, one count of rape, and one count of aggravated kidnapping.

The defendant claims that he is entitled to a new trial because the prosecutor suggested to the jury during closing argument that the defense bore the burden of establishing the defendant's innocence. The state responds that the defendant has waived this issue because he failed to object to the prosecutor's statements at trial. The state also argues that the prosecutor's remarks were not improper and that, in any event, any error is harmless because the trial court properly instructed the jury that the burden of proof was on the state. We agree with the state's arguments.

The Tennessee Supreme Court has recognized that "argument of counsel is a valuable privilege that should not be unduly restricted." Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975). Attorneys have great leeway in arguing before a jury, and the trial court's broad discretion in controlling their arguments will be reversed only upon an abuse of discretion. Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001). However, closing argument must be "temperate, must be predicated on evidence introduced during the trial of the case and must be pertinent to the issues being tried." Russell v. State, 532 S.W.2d 268, 271 (Tenn. 1976). Prosecutorial misconduct does not constitute reversible error unless the outcome was affected to the defendant's prejudice. State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001). In Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976), this court set out the following considerations for determining whether the state's conduct could have improperly prejudiced the defendant and affected the verdict:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.

2. The curative measures undertaken by the court and the prosecution.

3. The intent of the prosecutor in making the improper statement.

4. The cumulative effect of the improper conduct and any other errors in the record.

5. The relative strength or weakness of the case.

See also State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984) (approving these factors in determining if the misconduct resulted in reversible error).

During his closing statement, the prosecutor said the following:

> When [the defendant's attorney] argues to you, you have got to ask this question of him, and that question is, "Well, what difference does that make? What about what your client did to this victim? What about the fact that your client beat this victim senseless? What about the fact that your client anally raped her, orally [raped] her, vaginally raped her, and stuck a rod up inside of her? What about that, [defense attorney]? What's your defense to that?" That's what we are here for.
>
> . . . .
>
> So when [the defendant's attorney] gets up here to talk to you, be asking yourself as you listen to him, "[defense attorney], you tell me why your client did this. What justification and right does your client have to do this to this person?"

As the state points out in its brief, the defendant failed to object at trial to the prosecutor's statements. The failure to object contemporaneously constitutes a waiver of the issue pursuant to Rule 36(a), T.R.A.P. See also State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992) (failure to object to prosecutor's alleged misconduct during closing argument waives any later complaint). Moreover, we see no plain error because we believe that the prosecutor was commenting on the evidence introduced at trial, and that his statements were not improper. Also, the trial court properly instructed the jury that the state had the burden of proving the defendant's guilt beyond a reasonable doubt. The defendant is not entitled to relief.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOSEPH M. TIPTON, JUDGE