IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 17, 2004 Session

## STATE OF TENNESSEE v. JONATHAN GENE CAMPBELL

**Direct Appeal from the Criminal Court for Washington County**
**No. 26743     Robert E. Cupp, Judge**

_____

**No. E2003-01315-CCA-R3-CD - Filed October 6, 2004**

_____

The defendant was convicted of driving under the influence ("DUI"), first offense, and sentenced to eleven months, twenty-nine days in the county jail, with all but forty-eight hours suspended and the balance to be served on probation. In addition, his driver's license was suspended for one year and he was ordered to pay a fine of $350. In his appeal, the defendant argues that the trial court should not have allowed the jury to compare his signature from the morning of the arrest with his signature from another day for the purpose of inferring impairment. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Donald E. Spurrell, Johnson City, Tennessee, for the appellant, Jonathan Gene Campbell.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Dennis D. Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Because the defendant's misdemeanor trial was not transcribed, the parties agreed to a Joint Statement of the Evidence on March 12, 2004, which was filed by the defendant with this appeal. We quote the Statement in its entirety:

On December 30, 2000, at approximately 2 a.m., the Defendant left Shoeless Joe's Restaurant and nightclub in Johnson

City, Tennessee.  He had been out with friends since earlier in the night.

The Court took judicial notice from the December 30, 2000, publication of the Johnson City Press that the temperature was steady in the lower 20s with wind chill from 10 below to 10 above zero and westerly winds from 10-20 miles per hour and gusty according to the National Weather Service.  The Defendant was dressed in a long sleeved shirt and light fleece jacket.  The Defendant was driving a 1989 Jeep Cherokee, which according to the Defendant's testimony took a long time to warm up as it had an inadequate heater.

Defendant was less than one mile from Shoeless Joe's when his vehicle was stopped by Public Safety Officer Eric Hull of the Johnson City Bureau of Police.  Hull stated that he observed Defendant execute a turn from Mockingbird Lane onto Roan Street (a major thoroughfare) at a high rate of speed.  Hull followed Defendant at 50 mph in a 40 mph zone.  Hull said that Defendant weaved out of his lane three times jerkily.  Hull testified that the three times Defendant weaved occurred in less than a mile of travel.  Hull stated that the Defendant was driving in Washington County, Tennessee.  Hull said that Defendant claimed that he was cold and that he was bouncing to the music because his Jeep took a while to get warm.

Hull asked Defendant to perform field sobriety tests.  Hull said that Defendant explained that he recently suffered a broken leg and the cast had just been removed.  Hull testified that Defendant started the heel-to-toe test before he was instructed to begin, and that he did not keep his feet in a straight line.  Also, Hull said Defendant did not make a correct turn as was instructed.  On the one-leg stand, Hull said Defendant could not stand for the required 30 seconds.  The officer did not keep any written field sobriety notes of the Defendant's performance except for those entered on his affidavit of arrest.  Hull also stated that Defendant interrupted the instructions with superfluous information about his being in the military.  Defendant stated he was trying to tell the officer that he was in the military and learned marching and turning a specific way and wanted to make sure that he understood the officer's instructions.

Hull testified that it was his opinion that Defendant was under the influence of alcohol and arrested him for DUI.  Hull also testified that Defendant stated he had drunk four beers since 6 p.m.  Hull said

the Defendant refused implied consent, and thus he charged him with a violation of that statute also.

The Defendant testified that during the field sobriety tests, he was freezing cold and nervous at first, but that this gave way to frustration with the officer's attitude toward him. Defendant testified that he did very well on the field sobriety testing, and he stated that he had drunk four beers which were 8 to 10 ounces each. The Defendant testified that in refusing a blood test, he had offered to submit to a breath test but was told that that test was unavailable.

Defendant was taken to the Johnson City Jail. Hull and Defendant were en route approximately 10 minutes to the Jail. Upon arriving at the Jail, the booking process was preserved on videotape that was played for the jury and admitted into evidence. During the booking process, Defendant made two phone calls, stood on one foot to loosen his shoe laces and remove his boots while leaning on the counter with his other hand, and unbuttoned his shirt with one hand. Defendant's actions appeared logical and coordinated. From what little was said on the videotape, his speech did not seem to be slurred. Defendant stands stock still during all other times in what is approximately 15 minutes of video feed. Nothing on the video suggests impairment of the Defendant, although no field sobriety tests were attempted on the video.

Over defense objection, overruled at a bench hearing, the State was permitted to introduce a series of documents bearing the Defendant's signature to wit: a vehicle no-tow request liability release report, dated 12-30-00; appearance property bond, dated 12-30-00; and a notice to appear in Criminal Court, not dated. Testimony established that the notice to appear in Criminal Court was signed by the Defendant well after Defendant's release from jail. The State argued to the jury that the signature in the no-tow request was evidence of impairment when compared to the signatures in the other documents which were made when the Defendant, as stipulated, was sober.

The jury found the defendant guilty of driving under the influence; and the trial court sentenced him to eleven months and twenty-nine days in the county jail, with all but forty-eight hours suspended and the remainder to be served on probation. Additionally, his driver's license was suspended for one year and he was ordered to pay a fine of $350. The defendant now appeals his conviction.

## ANALYSIS

The sole issue the defendant raises on appeal is whether the trial court erred in allowing the jury, for the purpose of inferring impairment, to compare his "sloppy" signature from the morning of the arrest with a "neater" signature from another day.

In his brief, the defendant asserts there was no basis for concluding that a "bad signature" meant that he was impaired:

> [T]here exists not a single reference in any credible legal publication, reported or unreported case, professional publication which provide any empirical data on the correlation between signatures and impairment. Therefore, the only conclusion left is that the average juror is expected through common knowledge, lore or oral traditions and experience to be able to discern the obvious connection between a bad signature and driving impairment. Tennessee would appear to be the first and only state to advance this novel approach to DUI detection.

Further, the defendant asserts that "permitting a jury to examine contrasting signature styles of the same person for clues of driving impairment has no support logically or historically" and "[t]he introduction of signature analysis cannot possibly be regarded as harmless error beyond a reasonable doubt." The defendant also argues that any consideration of his signature by the jury should have been done only after the evidence was offered and through an expert witness pursuant to Rule 702 of the Tennessee Rules of Evidence.

The State contends that the signature comparison was both relevant and probative and that the trial court did not abuse its discretion in allowing the evidence, citing State v. Lester Boyd Baird, No. M1999-00181-CCA-R3-CD, 2000 WL 175343 (Tenn. Crim. App. Feb. 16, 2000). In Baird, a DUI case in which the defendant challenged the sufficiency of the evidence, we noted that "[t]he trial court also found it significant that the defendant's signature on the implied consent form could not be read and was different from signatures on two other forms that were signed at a later time." Id. at *1. We affirmed the judgment of the trial court.

However, in the case at bar, we are unable to address fully the defendant's legal argument because of the nature of the record on appeal. Since there is no trial transcript, we only have the portion of the Joint Statement of the Evidence to determine what happened at the trial. Regarding the signature evidence, the only thing we are able to conclude from the record is that the defendant objected to the introduction of the various handwriting samples and the trial court overruled the objection. We do not know, however, the basis of the objection or the reason for overruling the objection. See Tenn. R. Evid. 103(a)(1) (providing that timely objection for purposes of preserving the issue for appeal must state "the specific ground of objection if the specific ground was not apparent from the context"). We have previously held:

-4-

The purpose of Rule 103(a)(1) is to enable meaningful appellate review of a trial court's evidentiary rulings. According to the rule, the objecting party has the burden of placing on the record the reasons for an objection. Tenn. R. Evid. 103(a)(1) & (2). While the rule provides different requirements for situations in which the evidence is excluded or admitted, in both instances, *the objecting party* has the duty to state the specific basis for the objection.

State v. Dale L. Courtney, No. 03C01-9406-CR-00195, 1995 WL 221646, at *2 (Tenn. Crim. App. Apr. 11, 1995).

This court has further held:

Good trial practice and the Rules of Evidence demand that counsel state the basis for an objection when the objection is made and that opposing counsel be given the opportunity to respond. Not only does this 'make the record' for appellate review, but it encourages adequate preparation on the part of counsel so that meaningful objections and responses may be made. Trial judges should encourage the practice.

Id. at *3. Although the defendant's brief suggests the basis for his objection and the reasons given by the trial court in overruling it, we can look only to the agreed statement of facts, which is silent as to these considerations.

Also, according to the Joint Statement of the Evidence, "[t]he State argued to the jury that the signature in the no-tow request was evidence of impairment when compared to the signatures in the other documents which were made when the Defendant, as stipulated, was sober." However, the joint statement does not say whether the defendant objected to this argument, or let it pass to then argue on appeal that the argument was improper.

The failure to object contemporaneously to the closing argument in this case constitutes a waiver. See Tenn. R. App. P. 36(a), Advisory Commission Cmts. ("The last sentence of this rule is a statement of the accepted principle that a party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error."); see also State v. Smith, 24 S.W.3d 274, 279-80 (Tenn. 2000); State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992) (failure to object to prosecutor's alleged misconduct during closing argument waives any later complaint); Hill v. State, 513 S.W.2d 142, 143 (Tenn. Crim. App. 1974) (stating that to allow evidentiary questions to be raised at anytime would "undercut the very function of the trial process, for it would become a tactical matter of defense to allow a bit of constitutionally inadmissable evidence into the record, in the hope for an acquittal but secure in the knowledge that a new trial would result"). Accordingly, we conclude that the Joint Statement of the Evidence is not

sufficiently complete for us to determine the basis for the defendant's objection, if any, to the State's final argument.  Thus, the state of the record is such that we resolve this issue against the defendant.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE