IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 15, 2013 at Knoxville

**STATE OF TENNESSEE v. CORY AUSTIN EDISON**

**Appeal from the Criminal Court for Davidson County**
**No. 2011-B-1708      Seth Norman, Judge**

**No.  M2012-02205-CCA-R3-CD - Filed February 20, 2014**

The Defendant, Cory Austin Edison, challenges his jury conviction for aggravated robbery, a Class B felony, and his effective twenty-year sentence alleging prosecutorial misconduct in closing arguments; the admission of hearsay evidence without proper authentication at trial; and the improper imposition of consecutive sentencing.  After reviewing the record and the relevant authorities, we conclude that the imposition of consecutive sentencing was not supported by the evidence and remand for a new sentencing hearing on that issue. The judgment of the trial court is, therefore, affirmed in part, reversed in part, and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part; Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Jamie Machamer, Nashville, Tennessee, for the appellant, Cory Austin Edison.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and J.W. Hupp, Assistant District Attorney General; for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

The record reflects that the offense at issue occurred on December 14, 2010; however, the Defendant was not indicted in connection with this incident until June 17, 2011.  The indictment charged the Defendant with, Count 1, especially aggravated robbery, a Class A felony; and, Count 2, aggravated assault, a Class C felony.  Co-defendant, Bryant Donaldson, was also charged with especially aggravated burglary, and the cases were never severed. Co-

defendant Donaldson requested a preliminary hearing in which the victim, William Searle, testified. The hearing was held on February 9, 2011, and that testimony was as follows.

Mr. Searle testified at the preliminary hearing that in mid-December, around 11:28 p.m., he was at home with his children when he was awakened by a knock at his door. He did not have a peep hole, so he opened the door and saw two men with bandanas covering their mouths. Mr. Searle then slammed the door and put his back against it. After kicking the door multiple times, the men gained entry into his home. Shortly thereafter, the gun held by one of the men discharged and struck Mr. Searle in the head. The men threatened to shoot him if he did not give them his wallet. During the robbery, the bandana fell off of the man with the gun. Mr. Searle testified that the co-defendant ran away first, then the Defendant grabbed his wallet and fled the scene. He recognized one of the men, co-defendant Bryant Donaldson, but not initially. Mr. Searle admitted that he initially mistook the co-defendant for a man named Tommy Wilson and that he believed at that time that Tommy "was the person [he] had thought who done it[.]" However, after some acquaintances informed Mr. Searle that co-defendant Donaldson had been bragging about the robbery, he realized that he had mistaken the two men. Explaining his mistaken identity, Mr. Searle stated, "They're both 5'6", they both look look exactly alike. I mean, hold a picture of them next to each other and cover their mouth up, you can't tell them apart." He then identified the co-defendant in a line-up.

After being shown another line-up, Mr. Searle identified the Defendant as the unmasked man. Although Mr. Searle had never met him, he was certain that the unmasked man was the Defendant and stated, "it was no mistaken it was him . . . I wouldn't forget his face." He reiterated that he saw the Defendant's "whole face." Mr. Searle also testified that he reported his credit cards as stolen and that he was later informed that someone had attempted to use his credit card at Thornton's, later identified as a gas station, which was located down the street from his home.

At the conclusion of the hearing, the trial court found that there was sufficient evidence presented to find that there was probable cause to believe that the crime was committed, and a joint trial date was set. The following evidence, as relevant to this appeal, was presented at the joint trial held on April 16, 17, and 18, 2012.

Mr. Searle's testimony at trial was substantially similar to the testimony he provided at the preliminary hearing, with a few differences. First, Mr. Searle testified that, when the men knocked on his door, instead of opening the door, he looked out of the window and saw that the men had bandanas covering their faces. Second, he said that, when he spoke with the detective about his credit card being stolen and used at Thornton's gas station, it was the detective who asked him about Tommy Wilson being involved in the robbery; he then

identified Mr. Wilson from a line-up as someone he knew but insisted that did not mean that Mr. Wilson was one of the men who robbed him that night and that he never told the Detective for sure that Mr. Wilson broke in. Mr. Searle later admitted that he believed "for a few minutes" that Mr. Wilson had been involved in the robbery. He testified at trial that he identified the Defendant from a line-up less than a week after the incident, that he never confused the Defendant with Mr. Wilson, and emphasized that he had no "ax to grind" with either defendant.

Mr. Joshua Renner testified that, as the general manager at Thornton's gas station, he had access to the business records; that those business records, including transactions and video surveillance, were kept in the ordinary course of business; that he was familiar with the surveillance system; that he had reviewed and initialed the video surveillance from Thornton's prior to it being presented at trial; and that there did not appear to be any discrepancies regarding the date and time stamp on the video. Mr. Renner also testified that, regarding this footage, he "ran a check" of Thornton's business records to determine what credit or debit card transactions occurred during the same time frame as the video; he discovered that Mr. Searle's card had in fact been used on December 14 at the same gas pump as that depicted in the video. Mr. Renner explained that two transactions had actually occurred on the gas pump but that the other unrelated transaction had been suspended for unknown reasons so the cashier could assist another customer. On cross-examination, he admitted that the video never depicted Mr. Searle's card being used and that he did not remember whether he or someone else actually compiled the video footage for trial.

A jury convicted the Defendant of the lesser-included offense of aggravated robbery in Count 1 and as charged in Count 2. The trial court subsequently sentenced the Defendant to serve eight years in the Department of Correction (DOC) for the aggravated robbery conviction and four years for the aggravated assault conviction. The sentences were ordered to be served concurrently to each other but consecutively to two prior cases, 2008-A-230 and 2011-I-15, for which, the trial court found, the Defendant was on parole and community corrections, respectively, when the instant offenses were committed. A motion for new trial was filed and a hearing was conducted. In the motion, the Defendant raised the following issues, as relevant to this appeal: (1) the court erred in allowing, over the Defendant's objection, the introduction of testimony that Mr. Searle's credit card was used at a certain time as a hearsay exception under business records without requiring the State to properly follow the requirements of the exception; (2) the trial court erred in denying the Defendant's motion for judgment of acquittal regarding the aggravated assault conviction; (3) the State committed prosecutorial misconduct when it allowed a witness to testify falsely and then referred to the perjured testimony in its closing argument; and (4) the trial court erred in ordering this sentence to be served consecutively to a prior twelve-year community corrections sentence. After the hearing, the trial court dismissed the aggravated assault

charge and approved the aggravated robbery conviction, the resulting sentence, and the imposition of consecutive sentencing.  This appeal followed.

ANALYSIS

In this appeal, the Defendant contends that the following errors were made in the trial court:  (1) the State engaged in prosecutorial misconduct by allowing a witness to testify falsely and referring to said testimony in closing arguments; (2) the trial court improperly admitted a video as substantive evidence, over the Defendant's hearsay objection, without proper authentication; and (3) the imposition of consecutive sentencing was excessive and not in accord with the Sentencing Act.  The State responds that (1) the Defendant failed to make a contemporaneous objection to the prosecutorial conduct now cited as error and is limited to plain error review of that issue, to which he fails to demonstrate that he was entitled; (2) the Defendant has waived review of this issue because he did not object on hearsay grounds at trial and cannot change his grounds on appeal; waiver notwithstanding, the video was admissible under the business records exception to the hearsay rule and was properly authenticated; and (3) the imposition of consecutive sentencing was proper, under the standard announced in State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012), and was not excessive considering the seriousness of the offense and that the Defendant is dangerous.

*I. Prosecutorial Misconduct*

The Defendant argues that the State committed prosecutorial misconduct when it allowed Mr. Searle to "alter his testimony at trial to strengthen his testimony regarding identification[.]"[1]  Then, "[t]he [S]tate, in its closing, improperly referred to this perjured testimony,] stat[ing]: '. . . this Tommy Wilson that somehow showed up in a lineup and Mr. Searle said, Well, he might have been there at the time. . . [,]'" which was "a gross deviation from Mr. Searle's prior testimony that he had thought Tommy Wilson had 'done it' and that Mr. Wilson was charged with the crime."[2]

Our supreme court has consistently opined on prosecutorial misconduct regarding

---

[1] Although not explicitly stated in his brief, it appears from the record that the Defendant is comparing Mr. Searle's trial testimony to that offered at the preliminary hearing.

[2] We note that citations to the complained of conduct were not provided in the Defendant's brief.  However, our review of the record reveals that the prosecutor made the following statement in closing arguments: "Tommy Wilson that somehow showed up in a line-up and Mr. Searle said, Well, he might have been involved at the time."

closing arguments as follows:

> The basic purpose of closing argument is to clarify the issues that must be resolved in a case. State v. Banks, 271 S.W.3d 90, 130 (Tenn. 2008). While "argument of counsel is a valuable privilege that should not be unduly restricted," Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975), "such[ ] arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003); Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995); see also State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999). Because closing argument affords an opportunity to persuade the jury, 11 David L. Raybin, Tennessee Practice: Criminal Practice and Procedure § 29.2, at 97 (2008), leeway should be given regarding the style and substance of the argument. Banks, 271 S.W.3d at 131; State v. Cauthern, 967 S.W.2d 726, 737 (Tenn. 1998). Hence, counsel may employ "forceful language in their closing arguments, as long as they do not stray from the evidence and the reasonable inferences to be drawn from the evidence." Banks, 271 S.W.3d at 131.

State v. Sexton, 368 S.W.3d 371, 418-19 (Tenn. 2012).

The court has also advised that a criminal conviction should not be lightly overturned solely on the basis of the prosecutor's closing argument. Banks, 271 S.W.3d at 131 (citing United States v. Young, 470 U.S. 1, 11-13 (1985); State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001) (holding that a prosecutor's improper closing argument does not automatically warrant reversal)). "An improper closing argument will not constitute reversible error unless it is so inflammatory or improper that if affected the outcome of the trial to the defendant's prejudice." Id. (citing State v. Thacker, 164 S.W.3d 208, 244 (Tenn. 2005) (appendix); State v. Cribbs, 967 S.W.2d 773, 786 (Tenn. 1998)); see also State v. Reid, 164 S.W.3d 286, 321 (Tenn. 2005).

As explained by our supreme court in Sexton, there are five general areas of potential prosecutorial misconduct related to closing argument:

> (1) It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw. (2) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or guilt of the defendant. (3) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. (4) The prosecutor should refrain from

argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. (5) It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

Sexton, 368 S.W.3d at 419 (citing Goltz, 111 S.W.3d at 6 (citations omitted)); see also American Bar Association, Standards Relating to the Prosecution Function and the Defense Function §§ 5.8-5.9 (1970).

However, it is well-settled that defense counsel is obligated to object contemporaneously whenever it deems the prosecution to be making improper argument. See State v. Jordan, 325 S.W.3d 1, 57 (Tenn. 2010); State v. Keen, 926 S.W.2d 727, 736 (Tenn. 1994); see also State v. Thomas, 158 S.W.3d 361, 413 (Tenn. 2005) (appendix); State v. Green, 947 S.W.2d 186, 188 (Tenn. Crim. App. 1997); State v. Little, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992). Making a contemporaneous objection gives the trial court an opportunity to assess and correct any errors at the trial level, such as issuing a curative instruction, if necessary. See Jordan, 325 S.W.3d at 57. Defense counsel's failure to object contemporaneously will typically result in waiver of the issue on appeal. Id. at 58; Tenn. R. App. P. 36(a) (providing that an appellate court need not grant relief where party failed to take reasonably available action to prevent or nullify an error); see also State v. Stephenson, 195 S.W.3d 574, 601 (Tenn. 2006) (appendix); Thomas, 158 S.W.3d 361, 413 (where a prosecuting attorney makes allegedly objectionable remarks during closing argument, but no contemporaneous objection is made, the complaining defendant is not entitled to relief on appeal unless the remarks constitute "plain error"); Little, 854 S.W.2d at 651 (stating that defendant's failure to object to the State's alleged misconduct during closing argument waives that issue).

Our review of the record reveals that defense counsel did indeed fail to contemporaneously object to the allegedly erroneous statement made by the State during closing arguments; the Defendant did not request that we review this issue for plain error. The failure to request plain error review notwithstanding, even if we assume that the Defendant's argument is true, we conclude that there is nothing in the record which would support a finding that any of the arguments proffered by the State were "so exceptionally flagrant that they constitute plain error and provide grounds for reversal even if they were not objected to." See Banks, 271 S.W.3d at 132, n.30 (citing Reid, 91 S.W.3d at 283-84, and noting that "[u]nobjected to closing arguments warrant reversal only in exceptional circumstances. Accordingly, like the United States Court of Appeals for the Eighth Circuit, '[w]e bear in mind that fleeting comments that passed without objection during the

rough-and-tumble of closing argument in the trial court should not be unduly magnified when the printed transcript is subjected to painstaking review in the reflective quiet of an appellate judge's chambers.'") (internal citations omitted). The State's characterization of Mr. Searle's testimony was substantially similar to the actual trial testimony, and the Defendant has not shown that the State's argument prejudiced him nor has he presented any "exceptional circumstances" warranting plain error relief. Therefore, we conclude that consideration of this issue is not necessary to do substantial justice. See id. at 119-120.

To the extent that the Defendant is also alleging that the State committed prosecutorial misconduct by failing to correct Mr. Searle's inconsistent testimony, this issue has also been waived for failing to contemporaneously object to the testimony. See Tenn. R. App. P. 36(a). Again, we conclude that plain error relief is not warranted because no substantial right of the accused was violated. Banks, 271 S.W.3d at 119-20 (citing State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007)). The statement at issue involved a misidentification of Tommy Wilson, not the Defendant. In fact, Mr. Searle testified that he was 100 percent certain that the Defendant was one of the men who robbed him, the man with the gun, so even if we were to conclude that this statement was improper, it has little to no bearing on the guilt or innocence of the Defendant. Therefore, we decline to consider this issue.

## *II. Hearsay and Authentication*

The Defendant contends that the video depicting the Defendant using a credit card at the Thornton's gas station and Mr. Renner's testimony that Mr. Searle's card was being used at the same time was improperly admitted as substantive evidence at trial because it was hearsay. He explains that Mr. Renner had no personal knowledge of the contents of the video and failed to provide a report showing that the card was in fact used on the date and at the exact time specified in the video. He further contends that even if this evidence fell within the business records exception to the hearsay rule, both the video and Mr. Renner's testimony were still improperly admitted as substantive evidence because neither was properly authenticated.

Generally, the admissibility of evidence rests within the sound discretion of the trial court, and this court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record. State v. Franklin, 308 S.W.3d 799, 809 (Tenn. 2010). "A trial court abuses its discretion only when it applies an incorrect legal standard or makes a ruling that is 'illogical or unreasonable and causes an injustice to the party complaining.'" Id.

As a general rule, "a statement, other than one made by the declarant while testifying

at the trial or hearing, offered in evidence to prove the truth of the matter asserted" is considered hearsay and is inadmissible. See Tenn. R. Evid. 801(c), 802. However, exceptions to this general rule have been carved out because they "bear sufficient indicia of reliability and trustworthiness to warrant admission." State v. Henry, 33 S.W.3d 797, 802 (Tenn. 2000). One such exception involves business records that are kept in the course of a regularly conducted business activity. See Tenn. R. Evid. 803(b)(6).

Tennessee Rule of Evidence 803(b)(6) governs the admissibility of these business records, and it states, in relevant part,

> (6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Id. The comments emphasize that the rule differs from the federal rule because, unless the evidence otherwise complies with Rule 902(11), it "specifically requires that the declarant have 'a business duty to record or transmit' information. Without that duty, a business record would lack the trustworthiness necessary to carve out a hearsay exception." Id., Advisory Comm'n. Cmts.

Section 902, which is referenced in the business records exception above, describes the types of evidence that do not necessitate extrinsic evidence of authenticity prior to their admission. It states, as relevant to this appeal, as follows:

> (11) Certified Records of Regularly Conducted Activity. The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by an affidavit of its custodian or other qualified person certifying that the record-
>
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of and a business duty to record or transmit those matters;

(B) was kept in the course of the regularly conducted activity; and

(C) was made by the regularly conducted activity as a regular practice.

Id. at 902(11).

As a preliminary matter, the State argues in its brief that the Defendant is challenging the video on hearsay grounds for the first time on appeal, that the Defendant is precluded from changing the grounds for his objection on appeal, and that he has waived our review of this issue because his only objection to this evidence at trial was based on proof of the date and time, not hearsay. We agree with the State that the Defendant is limited to plain error review of the trial court's admission of the video at trial because he did not contemporaneously object to the introduction of the video nor did he raise the hearsay issue in his motion for a new trial. However, we will review this issue as it relates to Mr. Renner's testimony regarding what the video allegedly shows, as the Defendant raised this issue in a motion in limine and in his motion for new trial, and the State does not allege that this issue has been waived. Further, to the extent that the Defendant also alleges authentication issues unrelated to Rule 902(11), which is referenced in Rule 803(6), our review on those grounds has been waived for failure to raise such in the motion for a new trial.

After reviewing the record, we cannot conclude that it was plain error for the trial court to admit the video. Under plain error review, relief will only be granted when the following five prerequisites are met:

> (1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the accused did not waive the issue for tactical reasons, and (5) consideration of the error is necessary to do substantial justice.

Banks, 271 S.W.3d at 119-20 (citing Gomez, 239 S.W.3d at 737). Although prerequisites (1), and (4) are met in this case, we cannot conclude that the admission of the video breached a clear and unequivocal rule of law or that it affected a substantial right of the accused because, standing alone, the video is not incriminating. The video only shows the Defendant using a credit card at a gas pump. The video has no audio and contains no statements or assertions. As such, we do not believe that plain error relief is necessary to do substantial justice.

Regarding Mr. Renner's testimony that he reviewed the business records and determined that there was a credit card transaction for Mr. Searle that occurred during the

-9-

same time as the video, we cannot conclude that this evidence was properly admitted under the business records exception by a "custodian or other qualified witness or by certification." See Tenn. R. Evid. 803(6); see generally State v. Conway, 77 S.W.3d 213, 222 (Tenn. Crim. App. 2001) (stating that the custodian of records "was unsure of the person who made the entry and whether that person had a business duty to do so. Thus, the entry does not qualify under Tenn. R. Evid. 803(6) as a business record."). At trial, Mr. Renner testified that, as a general manager at Thornton's, he had access to the business records at the gas station; that those business records, including transactions and video surveillance, were kept in the ordinary course of business; and that he reviewed the transactions related to this case prior to trial. However, this fails to meet the requirements in Rule 803(6). Mr. Renner did not offer any documents demonstrating that Mr. Searle's card was used at the date and time specified, and he admitted that the video never depicted Mr. Searle's card being used. Mr. Renner was not the custodian of records nor did he identify who, if anyone, was under a business duty to prepare the records. Further, Mr. Renner admitted that he was not present when the incident in question occurred. Therefore, he did not have the personal knowledge and the business duty to record or transmit as required under Rule 803(6) or, alternatively, the certification required by Rule 902(11). See Tenn. R. Evid. 803(6), Advisory Comm'n Cmts; Id. at 902(11). Therefore, his testimony was, in fact, an out of court statement offered in court to prove the truth of the matter asserted: that the card that the Defendant was using in the video belonged to Mr. Searle. This was improper hearsay evidence.

Nevertheless, as the State succinctly argues, even if the trial court erred in admitting the explanatory statement, the error was harmless because the evidence against the Defendant, even without the statement, was sufficient to establish the Defendant's culpability for the aggravated robbery. Mr. Searle testified that the Defendant forcibly entered his home and robbed him at gunpoint, stealing his wallet, and that he later discovered that his card had been used. Mr. Searle thereafter identified the Defendant in a photographic line-up and never wavered from that identification. This testimony alone was sufficient evidence from which a reasonable jury could conclude that the Defendant committed the aggravated robbery for which he was charged.

### III. Consecutive Sentencing

The Defendant contends that the trial court's imposition of consecutive sentencing was excessive and not in accord with the Sentencing Act. We agree that consecutive sentencing was improperly imposed.

Our supreme court has recently held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing

-10-

determinations" "if [the trial court] has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." State v. James Allen Pollard, --- S.W.3d ---, No. M2011-00332-SC-R11-CD, 2013 WL 6732667, at *8-9 (Tenn. 2013). Further, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." Id. at *9; (citing see Tenn. R. Crim. P. 32(c)(1) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal."); see also Bise, 380 S.W.3d at 705.)

Tennessee Code Annotated section 40-35-115(b) provides that a trial court should consider the following criteria in determining whether to impose consecutive sentencing:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Id. The trial court may impose consecutive sentencing upon finding the existence of any one of the criteria contained in Tennessee Code Annotated section 40-35-115(b).

In the instant case, the trial court found that the Defendant was sentenced for an offense committed while on community corrections and, possibly, parole.[3] Tenn. Code Ann. § 40-35-115(b)(6). The trial court further found that the facts of the Defendant's case called for consecutive sentencing.

The record reflects that the Defendant was convicted of voluntary manslaughter on August 22, 2008, case number 2008-A-230, and sentenced to serve five years in the DOC at thirty percent; he was released from prison on April 27, 2010. The instant offense was committed on December 14, 2010. The Defendant was thereafter arrested for drug charges committed on December 16, 2010, case number 2011-I-15; he later pleaded guilty to those charges on January 26, 2011, and received a twelve-year sentence to be served on community corrections. On June 17, 2011, the Defendant was indicted for the instant offense. As the above recitation reflects, the Defendant had not even committed the offenses in case number 2011-I-15, for which he later received community corrections, when the instant aggravated robbery charge was committed. The record also does not support a finding that the Defendant was on parole when the instant offenses were committed. The trial court made no findings regarding other grounds supporting consecutive sentencing and failed to properly articulate its reasons for imposing consecutive sentencing; thus, there is an insufficient basis for meaningful appellate review.

CONCLUSION

Based on our review of the record and the applicable law, the judgment of the trial court is affirmed in part and reversed in part, and we remand this case to the trial court for a sentencing hearing on the issue of consecutive sentencing in accordance with this opinion.

_____
D. KELLY THOMAS, JR., JUDGE

_____

[3] The trial court found that the Defendant was on parole at the time of the offenses for case number 2008-A-230 due to the nature of the sentence and the time that had passed since his release from jail.