IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 1, 2016 Session

**STATE OF TENNESSEE v. BRANDON BLOUNT**

**Appeal from the Criminal Court for Shelby County**
**No. 14-00998     Paula Skahan, Judge**

_____

**No. W2015-00747-CCA-R3-CD  -  Filed May 26, 2016**

_____


Defendant, Brandon Blount, was convicted by a Shelby County Criminal Court jury of aggravated burglary acting in concert with two or more other persons, a Class B felony, and possession of a firearm during the commission of a dangerous felony, a Class D felony.  He was sentenced by the trial court as a Range I offender to consecutive terms of eight years at 30% for the aggravated burglary conviction and three years at 100% for the firearms conviction.  On appeal, Defendant argues that the evidence was insufficient to sustain his convictions; that the trial court erred by denying Defendant's motion to suppress his statement to police; by failing to instruct the jury that unlawful possession of a weapon is a lesser included offense of possession of a firearm during the commission of a dangerous felony; and that the trial court committed plain error by not declaring a mistrial because of the prosecutor's improper comments during closing argument.  After a thorough review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

M. Haden Lawyer, Memphis, Tennessee (on appeal); and Thomas Paul Pera and Kamilah E. Turner, Assistant Public Defenders (at trial), for the appellant, Brandon Blount.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pamela Stark and Shannon McKenna, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## I. Background

On September 16, 2013, Memphis police officers responding to a call about a burglary in progress at a house on Stowe Street discovered Defendant, who was armed with a loaded handgun, exiting the house through a back window. Defendant fled, jumped the backyard fence, discarded his gun, and eventually hid underneath the porch of a neighboring home, where he was apprehended by pursuing officers. Police captured a second man, Shawn Smith, when he exited through the same window. A third man, Gregory Patterson, was found hiding inside the home. When taken to the police station, Defendant spontaneously offered that he had been at the house only to steal copper, but refused to make a formal statement. On February 25, 2014, the Shelby County Grand Jury returned a two-count indictment that charged Defendant, Shawn Smith and Gregory Patterson with aggravated burglary acting in concert with two or more other persons and Defendant with possession of a firearm during the commission of a dangerous felony. Defendant was tried alone before a Shelby County Criminal Court jury in December 2014, and Mr. Patterson testified against him at trial.

### Suppression Hearing

Defendant filed a motion to suppress his statement to police, arguing that it was not freely, knowingly, intelligently, or voluntarily made because he had not been fully advised of his *Miranda* rights before giving the statement. At the hearing on the motion, Sergeant Marquis Collier of the Memphis Police Department testified that Defendant was taken into custody at approximately 9:50 a.m. on September 16, 2013. Defendant was brought to the interview room at Sergeant Collier's office, where Defendant was handcuffed to a bench while Sergeant Collier gathered information from the arresting officers. At approximately 12:55 p.m., Sergeant Collier began the process of attempting to take a statement from Defendant. In the interim, Defendant had been offered water and restroom breaks. He was also monitored through surveillance cameras.

Sergeant Collier testified that before he entered the room to read Defendant his rights, Defendant was making numerous comments about the incident and his arrest. As soon as Sergeant Collier entered the room with the advice of rights form, Defendant made the "spontaneous statement" that "he was not trying to steal items out of the house, he was just trying to get copper." Sergeant Collier testified that he told Defendant that he would be able to give his statement once he was read his advice of rights. Sergeant Collier then reviewed Defendant's *Miranda* rights with him and gave him the waiver of rights form to sign. Defendant appeared to understand his rights, but he refused to sign

2

the waiver, saying "[t]hat he was going to jail anyway and he was not going to sign anything."

On cross-examination, Sergeant Collier testified that Defendant was not *Mirandized* by the arresting officers. He estimated that Defendant was handcuffed in the roughly 10-foot by 10-foot interview room for possibly two to two and a half hours. However, after reviewing his notes, he testified on redirect examination that Defendant arrived at his office at 11:55 a.m., and he began attempting to interview him at 12:50 p.m.

Memphis Police Officer Lester Hobbs, one of several officers who responded to the "prowler" call, testified that he saw Officer Strickland's squad car take off as he was arriving at the scene and heard him announce on the radio that he had "one running." He said he followed Officer Strickland's squad car to the end of the cove, where he saw an African-American man, whom he later identified as Defendant, running across the street. At that point, he and Officer Strickland jumped out of their respective vehicles and chased Defendant on foot. They lost view of him for "a couple of seconds" when he ran behind a house, but then caught sight of him hiding underneath the porch steps of a house. Officer Hobbs testified that they dragged Defendant out from under the house, placed him in handcuffs, and took him back to the scene, where Officer Craig identified him. On cross-examination, Officer Hobbs estimated that Defendant was placed under arrest at approximately 10:35 a.m.

At the conclusion of the hearing, the trial court overruled Defendant's motion to suppress, ruling that Defendant's oral statement about being at the home only to steal copper was admissible at trial because it was a spontaneous statement that was not made in response to any questioning by the interviewing officer.

Trial

Memphis Police Officer Dack Smith testified that he and a second officer in a separate squad car were the first to arrive at the home, with other officers en route behind them due to the fact that three suspects had been reported. He said he walked around to the backyard, where he saw Defendant with his hands down on the patio and his feet still up on the window sill, apparently having just dived through a window in the back of the home. Immediately noting that Defendant had a silver handgun in his right hand, Officer Smith drew his own weapon and ordered Defendant to drop his weapon and get down on the ground. Instead of complying, Defendant got to his feet, ran southbound through the yard, jumped over the chain-link fence into a neighboring backyard, threw his gun down, and continued fleeing southbound.

Officer Smith testified that he was about to jump the fence in pursuit when he heard movement behind him, turned, and saw a second, unarmed man, identified as Shawn Smith, exiting the house through the same window. He said he took Mr. Smith into custody without incident while his fellow officer continued in pursuit of Defendant. While Officer Smith was still on the scene, the homeowner arrived and the door was unlocked to allow a K-9 unit into the home. The police dog located a third man, identified as Gregory Patterson, hiding under a couch inside the home, and Mr. Patterson, who was unarmed, was also taken into custody.

Officer Smith identified a number of photographs of the crime scene, including ones that showed the window through which Defendant and Mr. Smith had exited the house, a torn screen lying on the ground below the window, a patio chair under the window, and a pair of pliers lying on a patio table near the window. Officer Smith testified that he got a very good look at Defendant as he was exiting the window and that his attention was especially focused on him because he was holding a gun.

Memphis Police Officer Kyle Craig testified that he entered the backyard immediately behind Officer Smith to see Defendant, who was armed with a pistol, standing close to the back of the house while a second young man was in the process of climbing out a window. He said he ordered Defendant to stop, but Defendant began running southbound through the backyard. Defendant fled through the backyard of the home that backed up to the backyard of the Stowe Street home. He went between two houses, and threw down his gun. He then started up St. Elmo, the street immediately to the south of Stowe. Officer Craig testified that he chased Defendant, and provided descriptions of him over the radio as he ran. When he reached St. Elmo, he saw that other officers in squad cars were in pursuit, so he went back and secured the weapon that Defendant had tossed. Officer Craig identified the weapon as a Taurus .357 snub nose and said that it was fully loaded with seven rounds of ammunition when he recovered it from the ground. He testified that after he had secured the gun, he heard over his radio that Defendant had been captured, so he returned to the front of the home on Stowe Street, where he identified Defendant as the man who had discarded the weapon.

Officer Craig identified various other items of evidence that were recovered from the suspects. These included a black leather glove and a large plastic bag containing smaller plastic baggies of marijuana which were found on Mr. Patterson and a bag of marijuana which was found on Mr. Smith.

Memphis Police Officer Lester Hobbs reiterated his suppression hearing testimony about his pursuit and capture of Defendant from under the porch of a neighboring home, adding the detail that the reason officers physically dragged Defendant from under the

4

porch was because he refused to comply with their orders to come out. He also identified a pair of utility gloves which he said he recovered from Defendant's pants pocket.

Memphis K-9 Police Officer Gary Deel testified that when the female homeowner arrived at the scene, she gave him a key to the home and he, his partner, and his dog entered the residence. After first giving anyone inside the opportunity to come out voluntarily, he released his dog, which immediately located a suspect underneath the couch.

The homeowner, Audrey Faye Davis, testified as to several differences she observed about the condition of her home when she went through it after it had been cleared by police. The differences included an open bathroom window, a torn screen, a patio chair that had been moved beneath the window, an unfamiliar pair of pliers on the patio table, and the door to her backyard storage shed was open. She said she did not know Defendant, Mr. Smith, or Mr. Patterson and had not given them permission to enter her home. On cross-examination, she testified that she had moved out of the home approximately three days before the incident.

Sergeant Marquis Collier reiterated his suppression hearing testimony about Defendant's spontaneous statement that he "was not at this place to get stuff, he was just trying to get co[p]per."

Gregory Patterson testified that he, Mr. Smith, and Defendant went to the house for the purpose of finding something to steal and sell for money. He said he knocked on the door to see if anyone was home, while Defendant and Mr. Smith went to the back to search for an entry point. When no one answered the door, he went into the backyard and saw Defendant and Mr. Smith in the process of setting up a chair or table to climb into the house through a window. Defendant, who had a gun, entered first and Mr. Patterson followed second, with Mr. Smith bringing up the rear. Mr. Patterson testified that they had taken no more than three steps inside the home when the police arrived. Defendant dived headfirst back out the window, followed by Mr. Smith. Mr. Patterson attempted to hide underneath a couch, but the police dog found him and bit him. On cross-examination, he acknowledged that he and Mr. Smith both had marijuana with them, which they planned to smoke after they had gotten "whatever [they] could find [in the house]." He further acknowledged that he was hoping to receive "some leniency" in exchange for his cooperation in the case.

One of the victim's neighbors, Laquitta Hodges, testified that on September 16, 2013, she called the police after seeing two people in the victim's backyard.

Defendant testified that he entered the abandoned house with Mr. Smith and Mr. Patterson solely for the purpose of smoking marijuana. He said he fled when the police arrived and hid himself underneath a neighboring "patio" until the police discovered him. He claimed that after he complied with the officers' instructions to come out, they began kicking and beating him as they questioned him, asking, "What were you doing, stealing copper?" He said he answered, "Yes, sir, yes, sir, whatever you do stop hitting me." Defendant denied that he ever said anything to Sergeant Collier about being at the house to steal copper. He acknowledged he had gloves with him but said they were work gloves that he used in his landscaping job. On cross-examination, he also denied having had a gun and claimed that the police officers were "lying on" him.

## II. Analysis

### A. Denial of Motion to Suppress Statement

Defendant contends that the trial court erred by denying his motion to suppress his "coerced statement to law enforcement after his arrest[.]" We disagree.

In *State v. Echols*, 382 S.W.3d 266 (Tenn. 2012), our supreme court set forth the following standard of review for suppression hearings:

> [T]he standard of review applicable to suppression issues is well established. When the trial court makes findings of fact at the conclusion of a suppression hearing, they are binding upon this Court unless the evidence in the record preponderates against them. Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.
>
> Our review of a trial court's application of law to the facts is de novo with no presumption of correctness. Further, when evaluating the correctness of the ruling by the trial court on a motion to suppress, appellate courts may consider the entire record, including not only the proof offered at the hearing, but also the evidence adduced at trial.

*Id*. at 277 (citations omitted). Because the State prevailed at the suppression hearing in this case, we afford the State the strongest legitimate view of the evidence.

In Tennessee, for a confession to be considered voluntary, it must not be the product of "'any sort of threats or violence, . . . any direct or implied promises, however slight, nor by the exertion of any improper influence.'" *State v. Smith*, 42 S.W.3d 101, 109 (Tenn. Crim. App. 2000) (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897)). The essential question therefore is "whether the behavior of the State's law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined." *State v. Kelly*, 603 S.W.2d 726, 728 (Tenn. 1980) (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)). In determining the admissibility of a confession, the particular circumstances of each case must be examined as a whole. *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996).

Defendant argues that "[b]ecause the police forced [him] to remain in an interrogation room, shackled to a bench for several hours, his will was overborne and the statement coerced." However, according to Sergeant Collier's testimony on redirect examination, Defendant was handcuffed in the interview room for less than an hour before making his spontaneous statement about stealing copper. Moreover, Defendant was offered restroom and water breaks during that time and made his statement as soon as Sergeant Collier entered the room with the advice of rights form. At the conclusion of the suppression hearing, the trial court found that Defendant's statement was a spontaneous utterance that was freely and voluntarily given before the interviewing officer had begun asking him any questions about the crime. The evidence does not preponderate against these findings. Accordingly we affirm the trial court's denial of Defendant's motion to suppress his statement.

## B. Sufficiency of the Evidence

Defendant contends that the evidence is insufficient to sustain his convictions, arguing that no reasonable jury could convict him of the offenses based on what he characterizes as a "dearth of evidence regarding [his] intent" in entering the victim's home and the "minimal testimony" provided by the officers about his possession of a firearm. We disagree.

When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the

evidence and all inferences therefrom. *Id.* Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Viewing the evidence in the light most favorable to the State, the proof showed that Defendant entered the victim's home with his two companions with the intent to find something of value to steal. The proof further showed that Defendant was armed with a handgun, which he tossed during his flight from police. By convicting Defendant of the indicted offenses, the jury obviously accredited the testimony of the officers and Mr. Patterson over that of Defendant, who denied having had a gun or having made the incriminating statement about his intent to steal copper. In sum, the evidence was more than sufficient for the jury to find Defendant guilty of the offenses beyond a reasonable doubt.

### C. Jury Instruction on Lesser Included Offense

Defendant contends that the trial court erred by refusing his request to instruct the jury that unlawful possession of a weapon is a lesser included offense of possession of a firearm during the commission of a dangerous felony. He argues that unlawful possession of a weapon contains all the elements of possession of a firearm during the commission of a dangerous felony, that the evidence supported a charge on the lesser included offense, and that the trial court erroneously denied his request for the lesser included offense instruction by "citing the purported incongruity between 'firearm' and 'weapon' in the two statutes." The State responds by arguing that Defendant waived the issue by failing to put his request in writing and that there was no plain error in the trial court's denial of Defendant's oral request for the instruction. We agree with the State.

Tennessee Code Annotated section 40-18-110, in pertinent part, provides:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any lesser included offense charge.

> (c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, the lesser included offense instruction is waived.

8

Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for new trial or on appeal.

In *State v. Page*, 184 S.W.3d 223 (Tenn. 2006), the Tennessee Supreme Court determined that Tennessee Code Annotated section 40-18-110 was constitutional, concluding that "if a defendant fails to request an instruction on a lesser included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for new trial or on appeal." *Page*, 184 S.W.3d at 229. "Tennessee Code [Annotated] section 40-18-110(c) does not violate a defendant's right to trial by jury." *Id.* at 231. Therefore, we conclude that the issue is waived. However, our supreme court also made clear that when a jury instruction is waived for failure to request it in writing, an appellate court may still review the issue for plain error. *Id.* at 230.

In order for us to find plain error: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "'necessary to do substantial justice.'" *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The presence of all five factors must be established by the record before we will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. *Id.* at 283.

We agree with the State that plain error review is not warranted in this case, as there is nothing in the record to show that a clear and unequivocal rule of law was breached or that consideration of the alleged error is necessary to do substantial justice. Defendant is not, therefore, entitled to relief on the basis of this issue.

### D. Plain Error in Closing Argument

Defendant contends that the trial court committed plain error by failing to either declare a mistrial or give curative instructions to the jury following the prosecutor's improper comments in closing. Specifically, he argues that the prosecutor committed misconduct by improperly commenting on Defendant's credibility through her characterization of his testimony as a "fairy tale" and by her introduction of facts not in evidence and/or by her misstatement of the evidence, which occurred when she commented about what tools would be needed to steal copper and whether an expensive weapon would have been just "left lying around" in a backyard.

9

In his brief, Defendant concedes that he did not object when the prosecutor made the statements which Defendant complains of, and he admits he did not include the issue in his motion for new trial. The State, in its brief, correctly argues that defense counsel's failure to object contemporaneously constitutes a waiver of the issue on appeal. Tenn. R. App. P. 36(a). Furthermore, the State relies upon *State v. Little*, 854 S.W.2d 643, 651 (Tenn. Crim. App. 1992) (stating that a defense counsel's failure to object to the State's alleged misconduct during closing argument waives the issue).

It is within the discretion of an appellate court as to whether any plain error review is warranted. Tenn. R. App. P. 36(b) ("an appellate court *may* consider an error . . . even though the error was not raised in the motion for new trial or assigned as error on appeal"(emphasis added)).

The appellate record in this case is not sufficient to determine whether there was "plain error" to require review of a waived issue in order to do substantial justice. *Id*. There very well may be facts that would establish Defendant's entitlement to relief, and we make no determination in this case. Defendant's avenue for relief, if at all, would be in post-conviction proceedings where the pertinent issues can be vetted in an evidentiary hearing.

Accordingly, we choose in our discretion to not address the issue for plain error, and conclude the issue is waived.

## **CONCLUSION**

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE